Argued April 9, reversed and remanded June 25, 1929.

GEORGE CURTIS *v.* PORTLAND BASEBALL CLUB.

(279 Pac. 277.)

For appellant there was a brief over the name of *Messrs. Griffith, Peck & Coke,* with an oral argument by *Mr. John S. Coke.*

For respondent there was a brief over the names of *Messrs. Lonergan & Wagner* and *Mr. Neal R. Crounse,* with an oral argument by *Mr. Frank Lonergan.*

BELT, J.—Plaintiff seeks to recover damages for personal injuries sustained while watching a profes-

sional baseball game at Portland, Oregon, on Decoration Day, 1925. He testified that "three reserved seats back of the screen" were purchased for $3.30 and that the "usher conducted me to the three seats." His father and daughter accompanied him. There is a dispute in the testimony as to whether plaintiff at time of injury was back of or beyond that portion of the grandstand which was screened. He testified, however, that the screen was directly in front of him and was about flush with his seat. His seat was about sixty feet from the batter's box and approximately ten feet south of a line between third base and home plate. It was on the second row about six feet behind the screen and on the extreme northern end. The screen covering the front of the grandstand was forty feet high and one hundred fifty feet long. Plaintiff says a foul-tipped ball, which had been pitched with great speed, curved around the end of the screen and struck him on the nose, inflicting serious and permanent injuries.

The defendant baseball club is charged in substance with negligence in failing to furnish him with a reasonably safe place where he could watch the game. Defendant denied the charge of negligence and alleged, as affirmative defenses, contributory negligence and assumption of risk. Verdict and judgment were had for plaintiff in the sum of $3,000. Defendant appeals, asserting, among other things, that it was entitled to a nonsuit or a directed verdict.

In view of the demurrer to the evidence the statement of the case has been made in the light most favorable to the plaintiff. We pass the contention of defendant that, on the morning in question, no reserved seats were sold and that the admission price to the grandstand was seventy-five cents. It must be

assumed that plaintiff purchased a particular reserved seat and that he was injured while sitting behind the screen and in the manner claimed by him.

■ Wherein was defendant derelict in its duty? What did it fail to do which ought to have been done for the reasonable protection and safety of plaintiff who paid for a seat in the grandstand behind the screen? Under the law, defendant was obliged to exercise reasonable care and diligence commensurate with the danger involved, to protect its patrons from injury. Plaintiff, in the absence of notice to the contrary, had the right to assume that defendant would exercise care in maintaining the premises in a reasonably safe condition. Being in the business of providing public entertainment for profit, the defendant was required to use due care to protect its patrons from injury. It was not, however, an insurer of their safety. It was required to use only that degree of care exercised by persons of ordinary prudence and caution engaged in similar business. It was not bound to guard against highly improbable dangers or perils.

■ ■ Considering the location of plaintiff's seat with reference to the screen and the batter's box, it was, indeed, a most unusual and unexpected accident. There is no contention that the ball came through the screen. So far as the record discloses the screen was in a good condition of repair. We have not before us a case wherein a patron was injured by reason of a defective screen: *Edling* v. *Kansas City Baseball & Exhibition Co.*, 181 Mo. App. 327 (168 S. W. 908). Neither is it one where the person injured was sitting in the bleachers or outside the screen: *Cincinnati Base Ball Club Co.* v. *Eno*, 112 Ohio St. 175 (147 N. E. 86). It is a case where

the injury sustained was due to a foul ball which performed the remarkable feat of taking a sharp inshoot around the end of the screen and striking plaintiff, a strong and vigorous young man, on the nose. We inquire, could defendant, in the exercise of reasonable care, anticipate that such a thing would come to pass? It is to be remembered that plaintiff was six feet from the screen. A swiftly pitched baseball, when fouled by a batter, occasionally curves in an astounding manner. It might have been possible for the ball to have curved in the manner as claimed by plaintiff, but, undoubtedly, it was highly improbable.

Plaintiff says that a wing of the screen should have been extended back into the grandstand for a distance of eight or ten feet in order to protect persons from foul balls. No court, so far as we are aware, has ever held that it was the duty of a baseball park management to screen the entire grandstand or to construct such wings. Indeed, many people prefer to sit where their vision is not obstructed by wire netting. The defendant, in constructing 150 feet of screen and maintaining it in good condition did its full duty in protecting patrons who might reasonably be expected to be hit by a foul ball. To hold that defendant should be obliged to erect a winged screen as claimed by plaintiff would be subjecting it to a standard of care not warranted by law. We fail to see wherein the defendant has been remiss in its duty.

In *Wells* v. *Minneapolis Baseball & Athletic Assn.*, 122 Minn. 327 (142 N. W. 706, Ann. Cas. 1914D, 922, 46 L. R. A. (N. S.) 606), plaintiff was injured by a foul ball. In the statement of the case the court said:

"She does not claim that the ball which struck her went through the screen. She thinks it curved

around the end of it. Her companion, seated to her right, was of the same opinion, and also stated that she thought the screen extended to the east about eight feet farther than where she was sitting. All the other 13 witnesses, who professed to know where the plaintiff was when she was hit, are agreed that she was seated farther east and beyond the screen."

The court's conclusions were thus stated:

"We are all agreed that, if plaintiff occupied the place she and her companion testify to, the defendant had performed its full duty for her protection, and there is no liability for the injury. It is inconceivable that a baseball, when fouled by a batter, could curve around the end of the screen in the manner this ball is said by her to have curved and reach her. No one claims that it glanced from striking any post or object after the time it touched the bat and before it struck plaintiff. The defendant was not an insurer against all perils, nor was it guilty of negligence in failing to guard against improbable dangers. Therefore, if the court had submitted the case to the jury solely upon plaintiff's claim, or if all the evidence had sustained her as to her position in the grand stand, a direction for judgment would have been unavoidable."

In the Wells case only about 65 feet of the center of the grandstand was protected by screen. It was held that it was a question of fact for the jury to determine whether the defendant therein was negligent in not erecting more screen. Here the defendant erected 150 feet of screen. All of the baseball cases to which our attention has been directed are reviewed in *Cincinnati Base Ball Club Co.* v. *Eno, supra.* It would unnecessarily extend this opinion to review again the facts out of which these cases arose. Suffice it to say, none of them are directly in point. This case may well be said to rest within the twilight zone. Our best judgment, after careful thought and

consideration, is that plaintiff has failed to show any negligence on the part of defendant. The accident was one which could not reasonably have been anticipated.

It follows that the judgment in favor of plaintiff is reversed and the cause is remanded, with directions to enter a judgment of nonsuit.  REVERSED.

COSHOW, C. J., and BEAN, J., concur.

BROWN, J., absent.