## IVORY v CINCINNATI BASEBALL CLUB CO

Common Pleas Court, Hamilton Co

Decided January 17, 1939

J. R. Samuels, Cincinnati, for plaintiff.
August A. Rendigs, Jr., Cincinnati, for defendant.

## OPINION

By OUTCALT, J.

The defendant in this action, The Cincinnati Baseball Club Company, is a corporation with its principal place of business in Cincinnati, Ohio, engaged in the business of presenting public exhibitions of the game of baseball, a number of which games are presented each year at its premises in the city of Cincinnati, known as the Cincinnati Ball Park. The relative disposition of the stands and playing field comprising this park are portrayed in Exhibit one, roughly summarized as follows:

The premises are approximately quadrilateral, except for the exclusion of a triangle at the northeast portion of the premises, cut off by the line of a fence contiguous to the line of a street pictured in that section of the exhibit. The company has provided tiered seating accommodations for its patrons along the south, west and part of the eastern limits of the premises. There is a price differential between these various sections of available seating accommodations, which as they affected the plaintiff herein, will be described below.

That part of the stand at the southwest portion of the field is a double stand, has an upper deck, and is known as the grand stand. For tickets to that stand the high-est price is charged. Next, and contiguous to the grand stand, beginning one hundred to one hundred and twenty feet from home plate, there are, on each end of the grand stand, two single deck stands, known as the pavilions. For seats in these sections a price lower than that charged for seats in the grand stand is charged. For that section, unroofed, along the easterly side of the premises, known as the "bleachers," there is a third and lower price differential.

During the year 1935, and before and since, the defendant has designated certain days on which it presented exhibitions of professional baseball, as "Ladies' Day". The day on which the plaintiff received the injuries which are the subject of this action was such a day. Prior to the date set for this exhibition, it appears from the testimony, the defendant distributed among its female patrons tickets similar to that offered in evidence as Exhibit 2, which, while not a ticket for the particular exhibition attended by the plaintiff on the day she was injured, is identical with the ticket giving her admission to the park on August 5, 1935.

This ticket entitled her to a seat only in the right or left field pavilion, as stated on its face. Admission was not free, but upon payment of a small fee, termed a "tax" and the presentation of a ticket similar to Exhibit 2, ladies were entitled to a seat in the right or left field pavilion. The nature of this "tax" is not evident from the record, but the inference can not be avoided that even if all of this payment was to go to some taxing authority, the defendant received consideration for the use of its premises in the hope of paid attendance in the future; at all events, upon distributing such a ticket to this plaintiff, as it did to other ladies, the defendant expressly invited her to come upon its premises.

It is fairly inferable that a fence is erected dividing the pavilion from the grandstand, for it appears from the evidence of the defendant that it stationed certain employees at gates between the two sections who were authorized to admit the holders of "Ladies' Day" tickets to the grand stand upon payment of a larger consideration, for while, as stated, the ticket used by plaintiff entitled her to a seat in the pavilion upon the payment of the "tax", the evidence disclosed she was entitled to sit in the grand stand upon the payment of twenty-five cents additional. The plaintiff did not have any money for a better seat, even had she wished a better location. Holders of such tickets were not allowed in the "bleachers".

The plaintiff, upon entering the pavilion, took a seat in the row closest in proximity to the playing field. There was some testimony on the part of the defendant to the effect that holders of "Ladies' Day" tickets were not entitled to such seats, but there was no effort to restrict ladies to seats further back, nor any proof that there were any signs erected or instructions given advising patrons of any such restriction on the part of the management. The plaintiff, therefore, must be considered for the purposes of this case as an invitee, sitting in one of the seats assigned to the class of patrons to which she belonged.

If there was any warning of any kind given by the management to its patrons of any danger to be encountered from fast flying baseballs, any indication that some seats were safer than others, or that protected sections of seats were available to the patrons, no evidence relating thereto was offered.

Sections of the highest and lowest priced seats were protected from fast flying baseballs. A woven wire screen was erected in front of sections of both the lower and upper grandstands to the right and left of the batter's plate, and the front of the "bleachers" was provided with a similar wire screen. It was the contention of the defendant that the screen so placed in front of the "bleachers" was not erected for the purpose of protecting patrons—whatever its purpose, the screen had that effect, though it may only have been incidental to the primary purpose for its erection. For that section of the stands to which plaintiff's ticket of admission entitled her to admission, alone of the three classes of seats made available by defendant to its patrons, no protection was offered against the danger of batted and thrown balls.

The matter is now before the court on the motion of the defendant for a new trial, and its motion to set aside the verdict and for final judgment for the defendant. The principal question presented by these motions is that discussed under the designation "Assumption of Risk". Exclusive of this counsel have urged on the motion for new trial only that:

1. The verdict is excessive in amount not supported by the evidence at the trial and was rendered under the influence of passion and prejudice.

2. The plaintiff's testimony created a presumption of contributory negligence which she did not counterbalance or overcome.

3. Misconduct of counsel.

These matters will be considered in the order stated.

The court does not consider the verdict of the jury so excessive as to establish that it was rendered under the influence of passion or prejudice. The uncontradicted testimony was to the effect that the plaintiff on the date, and under the circumstances stated, was struck in the left breast by a fast flying foul ball; that as a consequence of this blow she suffered excruciating pain for a long time following. The testimony of her physician was that after the injury a lump formed in the breast, which lump is still present, and that cancer of the breast was thereby potentially present, as a direct result of this injury; that the only way to safeguard against that disease would be to operate upon the breast and to remove this lump by surgery. The cost of this operation is from three to five hundred dollars.

Plaintiff claimed some diminution of earnings in her occupation as a machine worker in a tailoring shop. The evidence it not satisfactory upon that claim but it is the belief of the court that the verdict is not excessive even if this claim be discounted entirely. The pain concerning which plaintiff testified continues to the present time, restricts the use of her arm, and, in the opinion of the court, confronted as she is with the necessity of an operation, its cost, the pain and suffering thereby entailed, the evidence amply supports the amount awarded by the jury.

Next, the claim of the defendant is that the testimony of the plaintiff created an inference of contributory negligence which was not counterbalanced or overcome in her case in chief. This claim is based upon the contention that she should have done something other than cover her face,—all she says she did when she saw she was about to be hit. Her testimony on that subject was:

"Q. Will you tell the jury just what happened?

"A. Well, I has my eye on the batter and I was watching him and when he batted the ball, I always follows the ball all the time and I was watching the ball, and saw the ball was coming over toward right field. I saw a bunch—

"Q. (Interrupting) What kind of a hit was it?

"A. It was a foul, because from the way it curved it was coming back, it was coming over towards the right field. At first I thought it was going to be a hit, and when it was going over the line there I saw it

was going to be a foul, and there was a bunch of school girls that were jumping up to get the ball, and I kept my eye on the ball, and I guess it must have been about that far from me when I saw it coming to me.

"Q. What did you do?

"A. I put my hands over my face."

The defendant contends she was guilty of contributory negligence because, while she followed the flight of the ball, she did nothing until, as she said, it was about two feet from her. Bearing in mind her description of this as a curving ball, that in an emergency she is charged with conducting herself with that degree of care that an ordinarily prudent person would display in the same or similar circumstances, the court believes the conclusion of the Court of Appeals of Missouri in a similar situation particularly applicable:

. "It is suggested he was negligent in not attempting to catch or dodge the ball. His explanation that he was watching the game but failed to see the course the ball had taken from the bat is reasonable and natural. The uncertainty in the direction, speed and force of a batted ball is one of the interesting and often exciting features of the game and frequently it is difficult for even the trained eye to follow the course of the ball. The issue of whether the plaintiff was reasonably attentive was an issue of fact to go to the jury." Edling v Exhibition Co., 181 Mo. App., 327, 168 S. W. 908.

The court does not believe that reasonable minds unerringly would reach the conclusion that the plaintiff ▮▮▮▮▮ was guilty of contributory negligence in failing to catch, dodge, or otherwise avoid the force of the ball under these circumstances.

The third claim of the defendant· is that counsel for the plaintiff so misconducted himself in argument as to require the verdict of the jury to be set aside. The defendant in answering an argument of the plaintiff used certain language to which proper exception was taken at the time. The court forthwith made every effort to admonish the jury in such fashion as would correct any error which might have resulted, but even so, the court does not consider the language of which complaint is made misconduct of counsel within the scope of the decisions of the Ohio courts upon that subject.

There remains the only question which has disturbed the court in the determina-tion of this motion, one which is likewise raised by the motion of the defendant for final judgment. This motion is founded upon what the cases term "assumption of risk". The duty of the defendant to the plaintiff is clearly stated in ▮▮▮▮▮ this state, and in all others in which a similar situation has been before the courts. Its duty is stated in **Syl. 1, The Cincinnati Baseball Club v Eno, 112 Oh St, 175.**

"1. One who expressly or by implication invites others to come upon his premises must exercise ordinary care to guard them against danger, and to that end he must exercise ordinary care to render the premises reasonably safe for the invitees."

"When a person invites the public to a place or grounds for a fair or public exhibition of any kind he is bound to use due care to protect those who come from injury, not only from defects in the premises but also from other dangers arising from the use of the premises by himself or his licensees." Cooley on Torts, 4th Ed., Section 440, p 188.

Thompson, Negligence, 2nd Ed., Section 993, p 911, amplifies the foregoing by stating that such persons rest under a special duty to exercise reasonable care in the construction, maintenance, and management of the premises to protect the public going upon the premises, and in Sections 995 and 996 considers the obligation analogous to that of a carrier. Courts do not vary in the statement of this principle; for example, the Missouri courts in Crane v Baseball Co., 168 Mo. App, 301, use this language:

"2. Defendants * * * are bound to exercise reasonable care, i. e., care commensurate to the circumstances of the situation, to protect their patrons against injury."

So, starting with the propostion that the defendant did nothing for the protection of spectators occupying the stand in which plaintiff had a seat, though protection was afforded for customers using higher and lower priced seats, did the act of the plaintiff in accepting the invitation of the defendant establish her contributory negligence so that she may not recover for injuries suffered as the proximate result of the failure of the defendant to exercise reasonable care? After a careful examination of all of the cases reported which were found by or cited to the court, it appears

that there is no case among any of the reports comparable to the instant case, in the respect that in this case protection was afforded one class of patrons while denied another. For example:

In the case of Wells v Minn. Baseball Club, 122 Minn., 327, 142 N.W. 706, the evidence conflicted as to whether the plaintiff sat behind the screen, which at all events was provided, there being given plaintiff an equal opportunity of sitting in that location. The holding of the court is applicable to the case at hand:

"One who maintains grounds to which the public is invited to witness games of baseball is required to use the care and precaution of the ordinarily prudent person to protect spectators against dangers incident to the game. It is a question for the jury what precaution and care should be taken to warn and safeguard the spectators against such dangers. Persons who know and appreciate the danger from thrown or batted balls assume the risk, and they can not claim the management guilty of negligence when a choice is given between a seat in the open and one behind a screen of reasonable extent."

In the Crane case, 169 Mo App. 301 supra, the plaintiff purchased a ticket which entitled him to a seat in the grandstand, which was protected from foul balls and wild throws by a wire netting, but preferring a seat further from home plate, instead of sitting behind the netting, voluntarily chose to take a seat which was unprotected. Under these circumstances the court held his contributory negligence was apparent and indisputable.

The case of Quinn v Recreation Co. 46 Pac. (2nd) 144, is likewise one in which the plaintiff took an unprotected seat, though a protected seat was available for the same price of admission. She was well acquainted with the game and admittedly familiar with the frequency with which foul balls are batted into the grandstand. The park had screened seats in the section along first base line, and others in the section behind home plate. She asked for a seat in the screened section of the grandstand behind first base, but when she was conducted there by the usher all of the seats in that section had been filled.

"The evidence also shows that at the time she took the seat assigned to her there were a number of unoccupied seats in the section behind home plate, but, as stated, she expressed a desire to witness the game from along the first base line, and consequently she continued to watch the game from the seat to which she had been assigned until she was struck by the ball * * * .And she frankly admitted knowing at the time she took the unscreened seat she would be in danger of being struck by a batted ball."

The case of Brisson v Minn. Baseball & Ath. Assn., 185 Minn., 507, 240 N. W., 903, presents a similar case of a patron who had a ticket to the grandstand, though different in the respect that the day in question was one on which an extremely large crowd attended the game, so that he found the screened portion filled when he arrived. The theory of the plaintiff was that the management was negligent in that it failed to screen the entire grandstand; the case merely holds that the doctrine of reasonable care did not require screens of such extent, but that the management exercises the required care if they provide screens for the most dangerous part of the grandstand and for those who may be reasonably anticipated to desire protected seats.

The other cases, in which the plaintiff under these circumstances was denied the right of recovery, two were cases in which the facts disclose admission to a grandstand or bleachers for part of which the protection of screening was provided, seats so protected being equally available to the plaintiff. Curtis v Portland Baseball Club, 130 Ore. 93, 279 Pac. 277; Loring v New Orleans Baseball Club, 16 La. App., 95; Kavafian v Baseball Club, 181 Pac., 679.

This is not the case before the court, for nothing, so far as the evidence discloses, had been done to afford protection or safeguard its patrons in the pavilion section. But, it is suggested by counsel, the park had established screened seats in the grandstand and the plaintiff, by paying a higher admission fee, could have had such protection, and that therefore the park had fulfilled its duty to her, and by her failure to pay the higher admission fee, which would have entitled her to a protected seat, she "assumed the risk." There is no case in the United States or England which supports such a doctrine in the determination of rights such as those at issue here. This, reduced to its essence, is a statement that the degree of care demanded of one in the position of the defendant is proportioned to the price of admission. Its very statement prevents its application in a court of justice.

Were this to be true, it would follow that one hurt in the use of defective steps in the gallery of a theatre could not recover, because wide, gently sloping aisles are available for those able to pay two or three dollars for an orchestra seat; that because such a patron did not choose or was not able to pay a large price of admission, he "assumed the risk" of being injured while reaching a cheaper seat within the limits of his purse. The rights of patrons in a place of public amusement are not dependent upon their ability to pay for their entertainment.

A more plausible theory is, though the defendant had done nothing in the exercise of reasonable care for the protection of its pavilion patrons, nevertheless the plaintiff in taking a seat in that section of the stand, assumed the risks of the game, and may not recover; that her alternative was to return to her home.

But, another difficulty is presented, for, if a patron assumes the risk of the entertainment, even though the proprietor has done nothing for his protection, then our careful statement of the duty and degree of care required of one who conducts a public amusement for profit is idle, futile and unnecessary. The analogy of such a situation is apparent to the case of **Hauer, Admr. v French Bros.-Bauer Co., 43 Oh Ap 333.** There our Court of Appeals said that when the defendant violated statutes designed to protect all indivduals from unprotected machinery, the doctrine of assumption of risk did not apply, because, so to apply it, would nullify the object of the statutes. Certainly if one who patronizes a public place of amusement may not rely upon the presumption that reasonable care has been taken to protect him from harm, but assumes all risk, even though the owner has done nothing toward his protection, then as a practical matter, the owner is required to do nothing to protect its patrons.

It seems to the court that much of the difficulty involved in the rationalization of the problem just presented is swept away with further examination of the term "assumption of risk". It appears that this term, technically, in its origin, connoted a consequence of contract, generally involving the relation of master and servant. See **Riding Acamedy v Miller, 127 Oh St, 545,** and "Voluntary Assumption of Risk", Francis H. Bohlen, 20 Harvard Law Review, 91.

As Bevis, J., says in the Riding Academy case, courts generally, including the courts of Ohio, have used the phrase interchangeably with phrases such as "taking the risk" or "incurring the risk", and Justice Bevis says:

"The thought behind these phrases as thus used has frequently been indicated in the law by the expression 'volenti non fit injuria'."

This is a term applied in certain cases of tort, which means "that to which a person assents is not esteemed in law an injury." 67 C. J., 270, Note 4.

The classic illustration of the doctrine of "volenti non fit injuria", as Pollock gives it, is the case of a fencer who seeks to bring an action for the thrust of his adversary. Our courts have applied the doctrine to the case of a horsewoman and to amusement devices of certain description like that of "The Flopper", described in Murphy v Steeplechase Amusement Co., 250 N. Y., 479, 166 N. E., 173.

The swordsman engages in a dangerous sport to match thrust with thrust, to parry if he can, to go through his adversary's parry if he may; the horseman rides not alone for physical exercise, but to dominate a spirited muscular beast; the patron of Coney Island engages in the amusement offered because he expects to be thrown about, jarred and jostled.

As Judge Cardoza said in the Steeplechase case:

"A fall was foreseen as one of the risks of the adventure * * * **Volenti non fit injuria** * * *. The plaintiff was not seeking a retreat for meditation * * *. The timorous may stay at home * * *. Nothing happened to the plaintiff except what common experience tells us may happen at any time as the consequence of a sudden fall. Many a skater or horseman can rehearse a tale of equal woe."

But this was not the case of this plaintiff. She did not attend the exhibition sponsored by the defendant that she might enjoy the thrill of avoiding fast flying balls. We must infer she anticipated her pleasure would be that resulting from appreciation of the skill of trained athletes, the determination of a contest between the respective skills of two competing teams. In this exhibition her part was that of a spectator as distinguished from that of one competing; her purpose was to watch, not mastery, or skill; and in her patronage of the facilities offered by the defendant, it was her right to make the assumption that the premises maintained by the defend-

ant would be so kept as to be reasonably safe for her occupancy.

"In the absence of notice to the contrary of a warning, the patron of a place of public amusement has the right to assume that the premises are in a reasonably safe condition." 62 C. J., 876.

The court can not believe that under the circumstances presented in this case this plaintiff was engaged in an undertaking in which the doctrine of "volenti non fit injuria" applies, that her role of spectator was such that she is deemed to have assented to injury. Rather it seems to the court, all of the above cases may be rationalized when it is considered that by "assumption of risk" the courts mean that the plaintiffs there were denied recovery because of contributory negligence in the choice of alternative courses. The rule applying in such circumstances is not "volenti non fit injuria," but is:

"A patron who is offered a choice of two positions from which to see an exhibition, one of which is less safe than the other, is not in the exercise of reasonable care, if, with knowledge of the risk and dangers, he chooses the more dangerous place." 62 C. J., 876, Section 72, citing Crane v Baseball Co., S. W., 1076.

The application of this principle, thus far and no farther, in conjunction with the principle that the patron is entitled to assume that the premises are in reasonably safe condition, has permitted recovery in cases at least equal in number to those in which recovery was denied on the ground of contributory negligence.

Perhaps the most important of these is the case of Olds v Baseball Club, decided by the Missouri courts in 1937, and reported in 104 S. W., 2nd, 746. This, with other cases following, emphasizes the necessity of submitting the determination of these matters to the decision of a jury.

In the Olds case, which, coincidentally, was the case of a lady who was a patron on a "Ladies Day," the plaintiff had taken a seat behind the screened portion. She testified that it was necessary for her to leave the game in the last half of the ninth inning; so that she might return to her home to prepare her evening dinner. To do so, she left her protected seat, and was in an aisle through which she had to walk thirteen feet and nine inches before entering the exit chute. She admitted that she was not watching the

course of the foul ball which struck her. At the conclusion of the plaintiff's case, the court directed a verdict against her, which, on review, was reversed, the court holding that whether the proprietor was negligent in his duty to exercise ordinary care for the safety of his patrons in failing to extend the screened portion was one for the jury, saying at p. 749:

"The very fact that defendant erected and maintained a screen 50 ft. wide immediately behind home plate is conclusive proof of its recognition of the necessity of protecting its patrons in that area. We do not believe it can reasonably be said, as a matter of law, that defendant performed its duty to exercise ordinary care, that is, care commensurate with the known danger of injury to its patrons in that area, when it failed to extend its screens so as to cover entrances and exits."

The case of Quinn v Baseball Co., 73 S W., 2nd, 520, (Mo. Court of Appeals), while decided upon the principle of an unusual hazard, affirms in Syl. 3 the general rule that a patron who has a choice of a seat behind a screen or in an unprotected portion of the seats, and who, voluntarily, and with full knowledge of the risks to be encountered, chooses an unprotected seat, is guilty of contributory negligence.

That these matters present a jury question is the holding in Wells v Minneapolis Baseball Club, above, the court saying:

"It is a question for the jury what precaution and care should be taken by the management of a baseball game to warn and safeguard the spectators against such dangers. Persons who know and appreciate the danger from thrown or batted balls assume the risk, and they can not claim the management guilty of negligence when a choice is given between a seat in the open and one behind a screen of reasonable extent."

The court in Crane case above, says:

"We are not dealing with a case where a patron was compelled to occupy an unprotected place or not see the game, but with a case where he was offered a choice between a protected seat and an unprotected seat, and with full knowledge of the risks and dangers of the situation, voluntarily chose the latter."

See also: Kavafian v Baseball Club, 177 Pac., 776, 181 Pac., 679; Blakely v White Star Line, 154 Mich., 635, 118 N. W., 432; Wills v Wis.-Minn. Light & Power Co., 187 Wis., 626, 205 N. W., 556.

414

This, it would appear, is the conclusion to which the Supreme Court of this state came in the **Eno** case, **112 Oh St, 175,** for Justice Allen says in the opinion at p. 181:

"It is the general rule, also, so far as screening the grandstand is concerned, that due care on the part of the management does not require all of the spectators to be screened in; that the management performs its duty toward the spectators when it provides screened seats in the grandstand and gives spectators the opportunity of occupying them."

In that case, although the plaintiff, a patron of the grandstand, had the equal opportunity of occupying a seat in the screened portion of the stand, and chose a seat in the unscreened portion, the Supreme Court said it was a question for the jury whether there was negligence on the part of the management in permitting practice within a short distance from the stands, and whether, under those circumstances, the plaintiff was guilty of contributory negligence in keeping his seat.

Not one of the reported cases involves the facts presented here; no case to which attention has been drawn is one in which the plaintiff was admitted only to an unscreened stand; no case follows the theory that since admission to a screened seat was available to the plaintiff upon payment of a larger admission fee, her failure to pay a greater price of admission makes her guilty of contributory negligence.

We all know that there is danger of misdirected baseballs flying into the grandstands and pavilions during a baseball game. The very testimony of the defendant's employees emphasized the hazard from that source. It is common knowledge that the danger from this hazard is greatest directly behind home plate, thence radiating and diminishing as the stands extend toward the outfield. Had the management done its full duty toward the patrons when it left without any protection large blocks of seats, occupants of which had no opportunity to occupy screened seats? Certainly, if we believe the testimony of those familiar with the Park, who state that it was a common occurrence for swiftly driven foul balls to enter the pavilions, reasonable minds might well differ as to the company's fulfillment of its duty to the defendant.

Plaintiff did not have a choice between a protected and an unprotected seat, according to the theory which appeals to the court. Was she then either to retire from the Park without seeing the game, or take the risk of being harmed? Even assuming for the moment the application of the theory of assumption of risk, it must be remembered that with her in the pavilion on that day were large numbers of other ladies similarly situated. Is this a matter upon which the court, as a matter of law, will say that all of the occupants of that stand were not acting as reasonably prudent persons, or is it a matter on which reasonable minds might differ?

In view of the reported cases cited, had the plaintiff had an equal opportunity to avail herself of a screened seat in the grandstands or bleachers, or had the management screened a reasonable number of seats in the pavilions for those who wished that protection, if then she had chosen voluntarily the less protected seat, the defendant would be entitled to judgment. But there were no screened seats equally available to her, and therefore the court believes the answers to the questions stated were for the jury to determine.

Especially is this so in view of the recent case of **Englehardt v Phillips,** No. 5509, decided by our Court of Appeals December 19, last, in which the patron of a swimming pool attempted a back dive from a ten foot spring board shortly after a heavy rain, during which attempt he fell and was seriously injured. The trial court directed a verdict for the defense at the end of the plaintiff's case, and this action was reversed by the Court of Appeals, the Appellate Court saying upon the question of the contributory negligence of the plaintiff:

"There is nothing about the facts in the instant case that take them beyond what the ordinary individual citizen may be reasonably presumed to know. The public commonly frequent swimming pools, which they are permitted to use for a small admission fee. The general public is entirely familiar with the appliances usually appurtenant thereto, including diving boards and platforms. Many thousands of persons use such appliances under all conditions. They may be presumed to know what constitutes reasonable care in the construction and maintenance of such appliances. No especial knowledge is needed to form an opinion upon what is and what is not reasonable care. 'The members of the public also

are familiar with the ordinary youth of eleven or twelve years of age, what he will be apt to do under given circumstances.' It is therefore perfectly fair and reasonable to say that the jury was fully competent to determine what measures a reasonably prudent person would employ to safeguard the use of the appliances involved considering that they would be employed by children of eleven and twelve years of age."

"Whether he used the care which a reasonably prudent person is accustomed to use under similar circumstances; whether he assumed a risk which was clearly manifest by reason of the water on the board; whether the operators used the proper care in not having an attendant at the board; whether the plaintiff's previous experience at the pool brought his experience up to a point which made his act foolhardy; whether the floor should have been sanded, are all questions proper for determination by a jury."

It is necessary only to rephrase these questions to decide this matter. Did the management of the park use ██ ordinary care to safeguard its patrons in the pavilion? Should the Club in the exercise of ordinary care have posted warnings of the dangers to be encountered? Did ordinary care require a reasonable number of the pavilion seats to be screened? Did Miss Ivory use the care which a reasonably prudent person is accustomed to use under similar circumstances? Did her previous experience at the Park bring her experience up to a point which made occupation of a seat in the pavilion foolhardy? These are all questions proper for determination by a jury.

This conclusion is amply supported by the decision of the Supreme Court in Lake Brady Co. v Krutel, 123 Oh St, 573, expressly following Syl. 1 of the Eno case above, in which the court say at p. 574:

"Whether the company in this case fulfilled the duty resting upon it was very largely a question of fact for the jury. The jury may have found that the diving of these two young men from the south side of the tower, with the results stated, was evidence sufficient to establish that neither of them knew that the water was so shallow on that side of the diving tower as to make it dangerous for them to dive from that side. The company insists that the deceased was using the diving tower in a manner in which he was not invited to use it, and for that and other reasons he was clearly guilty of contributory negligence as a matter of law. The evidence was in conflict with respect to contributory negligence of the deceased, particularly with respect to his knowledge of the depth of the water on the south side of the diving tower. There is evidence manifest in the record from which the jury might have found the deceased free from contributory negligence, and might also have found that the company was guilty of the negligence charged, failure to warn; and this being true. the judgment of the trial and Appellate Courts must be affirmed."

Then, although obiter, let us consider the conclusion of Justice Allen in the Eno Case, 112 Oh St., at pp 180-181, as the concensus of the reported cases. It is true that the consensus of these cases is that the management has performed its duty to patrons when it provides screened seats and gives spectators the opportunity of occupying them. But this is true when the opportunity is an equal one, else, as has been pointed out above, they could satisfy the duty imposed upo nthem by screening certain seats available only upon the payment of an exorbitant fee. But the preceding statement in the opinion is not complete, for as examination of the cases will disclose, spectators "assume the risk" of being hit by flying baseballs only, when, with a choice between alternative risks, they have chosen the more dangerous location.

It is evident that the conclusion of the court is that the motion for final judgment for the defendant must be overruled. It being the conclusion of the court that the motion for judgment for the defendant at the end of the entire case was overruled properly, it likewise follows that the motion for judgment at the end of the plaintiff's case properly was overruled.

Judgment entry therefore may be presented according to the ruling of the court.