[No. 14867.  Department One.  January 10, 1919.]

EDWARD A. KAVAFIAN, *Respondent,* v. SEATTLE
BASEBALL CLUB ASSOCIATION, *Appellant.*[1]

THEATERS AND SHOWS (2)—BASEBALL EXHIBITION—NEGLIGENCE—
EVIDENCE—SUFFICIENCY.  Evidence by defendant to the effect that a
grand stand at a baseball park was screened from foul balls for
sixty feet on each side of the center, in accordance with plans for
the structure, raises an implication or admission of negligence in
failing to protect spectators by screens for more than thirty feet on
each side of the center.

SAME  (2) — CONTRIBUTORY NEGLIGENCE — QUESTION FOR JURY.
Whether a spectator at a ball game, struck by a foul ball, was guilty
of contributory negligence or assumed the risk, in taking a seat in
the grand stand unprotected by screens when there were vacant
seats so protected, involves the question whether he acted as a rea-
sonably prudent person in relying on the implied representation that
his seat was reasonably safe, and is for the jury (Overruled on
rehearing).

EVIDENCE (199-1)—OPINION EVIDENCE—DUE CARE—CONCLUSIONS.
In an action for injuries sustained by a spectator struck by a foul
ball at a baseball game, a witness who was an authority on the
game and familiar with the situation may not be asked whether
there was sufficient screening of the grand stand for the protection
of the spectators, as it calls for a conclusion to be drawn only by
the jury.

ON REHEARING EN BANC.

THEATERS AND SHOWS (2)—CONTRIBUTORY NEGLIGENCE—ASSUMP-
TION OF RISKS.  A spectator, at a ball game, struck by a foul ball,
who voluntarily took and retained a seat in the unscreened section
of the grand stand when there were a great number of vacant seats
protected by screens that he might have chosen, assumes the risks
or is guilty of contributory negligence precluding any recovery
(MITCHELL, TOLMAN, and MAIN, JJ., dissenting).

Appeal from a judgment of the superior court for
King county, Frater, J., entered November 21, 1917,
upon the verdict of a jury rendered in favor of the
plaintiff, in an action in tort.  Reversed.

[1]Reported in 177 Pac. 776; 181 Pac. 679.

*J. Y. C. Kellogg* and *Robert L. Blewett,* for appellant, contended that the plaintiff was guilty of contributory negligence. *Blakeley v. White Star Line,* 154 Mich. 635, 118 N. W. 482, 129 Am. St. 496, 19 L. R. A. (N. S.) 772; *Crane v. Kansas City Baseball & Exhibition Co.,* 168 Mo. App. 301, 153 S. W. 1076; *Wells v. Minneapolis Baseball & Athletic Association,* 122 Minn. 327, 142 N. W. 706, Ann. Cas. 1914D 922, 46 L. R. A. (N. S.) 606.

*Reynolds & Harroun, J. Speed Smith,* and *Will H. Merritt,* for respondent, cited: *Edling v. Kansas City Baseball & Exhibition Co.,* 181 Mo. App. 327, 168 S. W. 908.

MITCHELL, J.—Respondent, having purchased a ticket to the grand stand, attended a game of baseball conducted by appellant in Seattle. During the game he was hit on the knee by a foul ball and injured. In the complaint he charges appellant with negligence in failing to maintain a screen in front of the seat he occupied. Appellant denied negligence on its part and affirmatively answered that, on the day of the accident, it had provided a screened section ample and sufficient for all patrons who cared to sit behind it, thus performing its full duty to the public; that respondent was acquainted with the game and its attendant dangers; and that, in taking a seat outside the screened section, he was guilty of contributory negligence and assumed the risk of the accident and injury. The affirmative matter of the answer was denied by the respondent. There was a trial by a jury, which returned a verdict for $1,000. The trial court denied motions for a directed verdict, for a judgment notwithstanding the verdict, and for

a new trial.  Judgment was entered on the verdict, from which an appeal was taken.

Assignments of error are based on the denials of the motions, and alleged error in refusing to admit certain evidence offered by appellant.

The ball park was new, not yet fully completed.  The seating arrangements were in the usual form, the center front of the grand stand being about fifty-eight feet from the home plate.  The plans provided for one hundred and twenty feet of netting in front of the seats in the grand stand—sixty feet on each side of the center.  Respondent had attended a number of games at the old park in Seattle and four or five at this new park.  On the day he was injured, he arrived during the second inning of the game and hurriedly took the first convenient seat he reached in the grand stand, where he was injured.  There is no dispute that the grand stand was screened for thirty feet on each side of its center.  All the evidence of the respondent tended to show he was sitting on a front seat well within sixty feet, and more than thirty feet to the right, of the center of the grand stand, and that there was no screen in front of him.  On the other hand, the evidence of appellant, including the plans of its buildings introduced in evidence, tended to show the grand stand was screened sixty feet on each side of its center, but is silent as to just where respondent was sitting.  All the seats protected by sixty feet of screen in the center of the grand stand were not taken when respondent arrived.  No usher was in attendance.

In keeping with what may be considered common knowledge, the evidence showed there was danger from foul balls at all places back of the foul lines, the danger being greatest as to force and frequency of such

balls, at points directly behind the batter, the danger
thence radiating and decreasing.

The jury was properly instructed, and we must view
the situation through the judgment of the jury as ex-
pressed by the verdict. By such rule it must be con-
sidered as proven that there were only thirty feet of
screen on each side of the center of the front of the
grand stand, and that respondent when injured was
sitting in the front row at a point between thirty and
sixty feet from the center of the grand stand and with-
out the protection of a screen. At the same time, by
undeniable implication, appellant admitted that rea-
sonable care and prudence required it to have the
front of the seats screened to a point beyond the re-
spondent's seat, by the introduction of evidence to
establish that fact. The jury was justified in con-
cluding the situation defined negligence, which, as
Judge Cooley in his work on Torts says, is "the fail-
ure to observe, for the protection of the interest of
another person, that degree of care, precaution and
vigilance which the circumstances justly demand,
whereby such other person suffers injury."

As to contributory negligence on the part of plain-
tiff, or that he was at fault in not taking a seat in
the portion that was screened, this involves the de-
termination as to whether or not he acted as a rea-
sonably prudent person would under similar circum-
stances. He came in, as he had a right to do, while
the game was in progress and took the first vacant
seat he noticed. By inference, he was invited to that
seat. He paid an extra amount for the privilege of
the grand stand. There was the implied representation
on the part of appellant that the seat he took was
reasonably safe. There was no caution or notice to
him that it was other than safe. The ultimate fact of

whether he could or should, at the time, have reasonably anticipated being struck and injured in that place by a foul ball, like the alleged negligence of appellant, was properly submitted to the jury.

After appellant's witnesses had testified that the building plans called for one hundred and twenty feet of screen and that that much had been put up—the latter being disproved to the evident satisfaction of the jury—appellant called a witness, an acknowledged authority and writer on the game, who, after testifying to his constant attendance at the games in Seattle for years and the frequency and uncertainty of the force and direction of foul balls, was asked: "Did you ever see a time there was not sufficient screening at that park for the protection of the spectators?" The question was objected to on the grounds that it called for a conclusion to be drawn only by the jury. The court properly sustained the objection and advised appellant: "Let him state how much screening there was; but whether it is sufficient, or not, is for the jury."

Finding no error, the judgment is affirmed.

MAIN, C. J., MACKINTOSH, TOLMAN, and CHADWICK, JJ., concur.

## ON REHEARING.

### [En Banc.  May 31, 1919.]

PER CURIAM.—Upon a rehearing of this case, a majority of the court is of the opinion that the conclusion arrived at in the Departmental opinion is incorrect. The facts in the case show that the respondent entered the grand stand, owned and operated by appellant, during the progress of a baseball game; that he was familiar with the manner in which baseball games are conducted, having been a frequent spectator

thereof; that the grand stand had a screen in front of a portion of it, back of the home plate, and that in this screened portion there were a great number of vacant seats, any of which he was entitled to take under his admission ticket; that he voluntarily took a seat outside of the screened area; and that, having gone there to see a baseball game, it must be true that, before many minutes had elapsed, he became conscious of the fact that between him and the balls no screen existed, if he was not aware of that fact at the very moment of taking his seat. Conscious of the fact that balls are very often hit "foul," and that wild throws sometimes result in the ball falling among the spectators, and conscious of the fact that there was no protection between the balls and himself, he continued to occupy a seat in that unscreened portion until he received his injury.

It matters not whether one designates his act in this regard contributory negligence or views it as in the nature of assumption of risk, the result is the same. The place in which he could have taken a seat would have fully protected him against the ordinary and usual hazards incident to witnessing the game in question, but he chose to sit elsewhere and substitute for that safety the compensating facility of vision. If there was a chance of danger, the respondent voluntarily took it. Having purchased a ticket which offered him a choice of two positions, he, with full knowledge of the risk of injury, chose the more dangerous position. The view here expressed would seem to be supported by the following cases: *Blakeley v. White Star Line,* 154 Mich. 635, 118 N. W. 482, 129 Am. St. 496, 19 L. R. A. (N. S.) 772; *Crane v. Kansas City Baseball & Exhibition Co.,* 168 Mo. 301, 153 S. W. 1076; *Wells v. Minneapolis Baseball & Athletic Ass'n,* 122

Minn. 327, 142 N. W. 706, Ann. Cas. 1914 D 922, 46 L. R. A. (N. S.) 606.

The judgment of the lower court is reversed and the cause dismissed.

MITCHELL, J. (dissenting)—I adhere to the views expressed in the former opinion in this case, and therefore dissent.

TOLMAN and MAIN, JJ., concur with MITCHELL, J.