## IVORY v CINCINNATI BASEBALL CLUB COMPANY

Ohio Appeals, 1st Dist, Hamilton Co

No 5604. Decided May 22, 1939

Julius R. Samuels, Cincinnati, for appellee.

August A. Rendigs, Cincinnati, for appellant.

### OPINION

By MATTHEWS, J.

This is an appeal by the defendant from a judgment for $1000.00, rendered on a verdict for that amount in favor of the plaintiff on account of personal injuries resulting to her by being struck by a baseball while she was witnessing a professional baseball game as a patron of the defendant.

This incident happened at Crosley Field, the defendant's nall park, in Cincinnati, in 1935 during a game between the Cincinnati Reds and the Chicago Cubs, two National League baseball clubs. The plaintiff was hit on the breast by a foul ball from the bat of a Cincinnati player who was taking his regular turn at the bat during the game.

The seating arrangement at the park

was, a roofed and double tier grand stand, a part of which was protected from foul balls, behind the home or batter's plate, on either side of this grand stand and farther from the batter's place other seats, called right and left pavilions, over which there was a roof, but which were not protected by screening, and beyond these the unroofed bleachers, in front of which was a screening extending upward ten or twelve feet. The grand stand and pavilions combined were curved in the form of a horseshoe.

The plaintiff was seated in the front row in the right pavilion at the time more than one hundred feet from the batter. It was "Ladies' Day", on which by payment of ten cents a lady could obtain admission to the pavilion to witness the game from that point, or, if desired, could pay an additional twenty-five cents and thereby secure admission to the screened portion of the grand stand. The plaintiff took advantage of the reduced rate, secured a ticket, paid the ten cents, and selected a front seat in the pavilion from which to witness the game. There were available seats in the grand stand behind the screen, but the plaintiff said she preferred to sit toward the field rather than behind the batters, and on this particular occasion she had never intended to sit in the grand stand, and did not have the money with her to pay for a grand stand seat.

The plaintiff had frequently witnessed ball games at Crosley Field. She testified that she enjoyed witnessing ball games very much and had been in the habit for about twelve years of seeing as many games at Crosley Field as possible. She had already attended ten or more games there during the season of 1935. She usually sat in one of the pavilions, but, on occasions, had sat behind the screen in the grand stand. She testified that she was thoroughly familiar with the way the game was played and with the arrangement of the seats and the playing field. On many occasions she had seen balls batted into the pavilions, had seen patrons catch the balls, or scramble for them, as

the case might be, but had never seen any patron hit by a ball.

On this specific occasion her attention was focused on the play at all times. She saw the batter and the pitcher in position. She saw the pitcher throw the ball. She saw the batter swing his bat, heard the bat hit the ball, watched the flight of the ball toward the right pavilion, where she was seated, knew that it would fall in the crowd seated there, out did not suppose, according to her testimony, until it got within about two feet of her that it would strike her. She then threw up her hands to protect her face. She testified that she had never thought of the danger incident to sitting in the pavilion, and that there was no warning of any danger. It is manifest that she knew of all the elements of danger from such position and must be charged with consciousness of them. In **Cincinnati Base Ball Club v Eno, 112 Oh St 175 at 180 and 181,** summarizing the case, the Court said:

"The consensus of the above opinions is to the effect that it is common knowledge that in baseball games hard balls are thrown and batted with great swiftness, that they are liable to be thrown or batted outside the lines of the diamond, and that spectators in positions which may be reached by such balls assume the risk thereof."

That the plaintiff had actual knowledge of all these things that the court said are common knowledge is clear.

It is a universal principle that when two persons come into such nearness to one another that they and the agencies under their control may cause injury to one another a duty devolves upon them to so conduct themselves and so manage the agencies under their control that neither will be injured by failure of the other to conform to the standard of duty, the exact extent of the duty depending upon the attending circumstances. It is the plaintiff's claim, as stated in her brief, that the defendant's conduct failed to meet the stand-

ard of duty arising out of the circumstances in these respects:

"The negligence claimed is that the defendant failed to take precautions and care for the safety of its guests and failed to provide any screening or other safeguards or protection for the safety of the persons occupying seats in the pavilion and failed to give warning or post notices or signs as a warning to indicate the danger of occupying such unscreened and unguarded seats."

On analysis of the claim it is seen that two delinquencies are asserted: (1) That the defendant failed to provide any screening or other safeguard or protection for those sitting in the pavilion, and (2) that it failed to warn the plaintiff of the danger by posted notices or otherwise.

Now what was the duty which the defendant owed to the plaintiff?

The defendant owned or had possession of the ball park. It controlled the activities of the players who were acting as its agents in giving the exhibition. It had invited the plaintiff upon the premises to witness the game and the plaintiff had paid a consideration for the privilege. The duty of the invitor to the invitee is stated in the syllabus to Cincinnati Base Ball Club v Eno, supra, to be to "exercise ordinary care to guard them against danger, and to that end he must exercise ordinary care to render the premises reasonably safe for the invitees." But the invitor is not an insurer of the safety of the invitee; neither is the invitee protected against all hazard, nor relieved of all duty to himself for his own safety. And the extent to which the duty of self-protection rests upon the invitee, the duty of the invitor to protect is reduced. The extent of these relative duties depends upon many factors involving the capacity and opportunity of the invitor to protect the invitee and the capacity and opportunity of the invitee to protect himself.

In the case at bar we are confronted with the task of determining the relative duties of persons sui juris and equally cognizant of all the hazards of the situation in which they have placed themselves by their voluntary acts. Neither has deceived or misled the other. This is not a case, therefore, in which the invitor had superior knowledge of a hazard and failed to guard or warn an inexperienced invitee against it as in the case of Shanney v Boston Madison Square Garden Corporation, 5 N. E. (2d.) (Mass.) 1, or James v Rhode Island Auditorium, 199 Atl. (R.I.) 293. It is not a case of an invitor devising a plan of protection for the invitee and impliedly holding out that it is adequate when in fact it is inadequate because of an inadequate plan or failure to complete an adequate plan, as in Olds v St. Louis National Baseball Club, 104 S. W. (Mo.) 746, and Kavafian v Seattle Baseball Club Assoc., 105 Wash., 215.

In James v Rhode Island Auditorium, supra, the court had occasion to and did consider the distinction between cases where the invitee was thoroughly familiar with all the hazards and those in which the invitee was inexperienced. The plaintiff was injured while witnessing a professional hockey game for the first time. The court at page 295 said:

"In an action of trespass on the case for negligence against the proprietor or operator of a place of amusement, an invitee for compensation is ordinarily entitled to the exercise of reasonable care by the defendant in protecting such invitee against dangers which the defendant knew or reasonably should have foreseen in the exercise of such care. An invitee ordinarily assumes the risk of an obvious danger or of one that is a matter of common knowledge; conversely, such a person does not assume the risk of a hidden or undisclosed danger, not of common knowledge, in the absence of warning or personal knowledge. The defendant in the instant case was not required to anticipate and protect the plaintiff against the unlikely or the improbable, but it was bound to

use such measures and means, in the use of its premises, as the ordinary prudent person, in its position and with its knowledge of hockey games, would have reasonably employed in protecting an invitee from dangers reasonably to be apprehended."

And in discussing the distinction between hockey and base ball in the extent of public knowledge of the way they are played and the hazards attending them, the Court at page 297 had this to say:

"We find considerable difficulty in reaching the conclusion that the average person has a similar knowledge of the risks incident to hockey and to base ball. In hockey the puck is supposed to be driven along the ice towards the goal at each end of the playing surface while in baseball the ball is pitched through the air to be batted out towards the playing field, far or near, on the ground or in the air, according to the skill of the batter or to chance. The average person of ordinary intelligence in this country is so familiar with the game of baseball that it is reasonable to presume that he appreciates the risk of being hit by a pitched or batted ball without being specially warned of such danger. Therefore, a spectator at this nationally known game may ordinarily be held to have assumed such a risk. It is going quite far to assume, however, that the average person has the same knowledge respecting the risk of being hit by a flying puck in a hockey game played in a specially constructed rink, which, according to the testimony of the defendant's expert, is not yet fully standardized in all details."

It is not necessary in this case to rely on imputing things of common knowledge to the plaintiff. Her testimony shows she had full and complete actual knowledge. That knowledge dispensed with any necessity for notice or warning to her. In **Greyhound Lines, Inc. v Martin**, 127 Oh St 499, it was held that:

"A party cannot complain of the lack of warning of conditions involving dangers to himself when he has as full knowledge of such condition as if he had been apprised of them."

After discussing the decided cases involving the rights of a patron at a baseball game arising out of injuries received by a ball being deflected into the stand our Supreme Court in Cincinnati Base Ball Club v Eno, supra, said at 181:

"We concur in the soundness of the views expressed in the above cases with regard to the injuries incurred by balls thrown or batted during the course of a baseball game. The plaintiff below urged that the defendant was negligent in not protecting her by screening that part of the grand stand in which she sat, and if this were the only allegation of negligence, or if it were the only allegation of negligence upon which evidence was given, we should be compelled to reverse the judgment of the Court of Appeals."

We are of the opinion that a conclusion on that point of law was necessary to arrive at a decision in that case, and that it is binding upon this court. It is in conformity to the overwhelming weight of the authorities, some of which are collected in the annotations to Waddell's, Admr. v Brashear, 98 A. L. R. (Ky.) 553 at 565. The case of Cates v Cincinnati Exhibition Co., 1 S. E. (2d) 131, decided February 1st, 1939, by the Supreme Court of North Carolina, involved facts identical with the facts in the case at bar, and the decision was in harmony with the greater weight of the authorities, that under such circumstances there is no liability.

We are of the opinion that the trial court erred in overruling the defendant's motion for a directed verdict and for judgment in its favor. It is unnecessary, therefore, to consider the other assignments of error.

For these reasons, the judgment is reversed and final judgment is rendered in this court for the defendant-appellant.

HAMILTON, PJ. & ROSS, J., concur.