EUGENE L. HUDSON, Appellant, v. KANSAS CITY BASEBALL CLUB, INC.
—164 S. W. (2d) 318.

Division Two, July 28, 1942.

Rehearing Denied, September 8, 1942.

*Barnett, Seddon & James* for appellant.

*Watson, Ess, Groner, Barnett & Whittaker* for respondent.

1218

■ BARRETT, C.—The trial court sustained a demurrer to Eugene L. Hudson's petition for damages for injuries received while he was a spectator at a baseball game. The question for decision is whether his petition contains averments of specially pleaded circumstances constituting negligence on the part of the Kansas City Baseball Club.

The plaintiff's petition describes the typical baseball diamond and grandstand, with the grandstand seats immediately back of home plate protected by a wire netting or screen. The petition alleges that the defendant knew "That in the game of baseball there exists the constant hazard of foul balls driven with great force into the grandstands provided for spectators unless the said stands are protected by such wire netting as aforesaid," consequently it was the defendant's duty to provide reasonable safeguards for the invited public.

On July 28, 1940, the plaintiff was a fee paying invitee at a doubleheader game "with the intention of occupying a seat protected by the wire netting as aforesaid." He says he is subject to the ordinary impairments of eyesight of a man sixty-four years old. He asked for "the best reserved seat," paid the one dollar admission fee, was given a ticket and escorted to a seat in the grandstand by an usher, *"being all the while under the impression that he was seated behind the wire netting aforesaid."* That while he "was thus seated and *under the impression that because he had purchased a reserved seat ticket he was protected by a wire netting between himself and the home plate"* and was watching the game he was struck and seriously injured by a foul ball.

The five specifications of negligence alleged as the proximate cause of the plaintiff's injury and as entitling him to recover are that the defendant carelessly and negligently:

(1) "failed to protect with wire netting as aforesaid, that portion of the grandstand lying directly in the line between the seat occupied by plaintiff and the batter's box at home plate, from which the ball in question was hit;"

(2) "offered for sale seats in said grandstand without definite classification and notice thereof to the public with reference to

whether some were or were not protected by such wire netting;''

(3) ''offered for sale as reserved seats not only seats protected by wire netting, but also seats that were unprotected by such wire netting, thereby creating in the minds of many members of the public and in the mind of this plaintiff the false impression that 'a reserved seat' was one protected by a wire netting;''

(4) ''gave plaintiff reason to believe that in purchasing a seat of the class of that which plaintiff purchased he was securing a seat protected by said wire netting . . . and gave him no notice to the contrary;''

(5) ''through its agent, servant and employee, the aforesaid usher, seated the plaintiff, a person of advanced years, in a seat designated as a reserved seat, but which was unprotected by any such wire netting . . . and in so doing failed to give him any notice of the absence of the protection of such wire netting between home plate and the seat in which he was so seated by said usher.''

The plaintiff's contention is that these allegations demonstrate negligent conduct on the part of the defendant because they show a breach of legal duty by the proprietor of a place of public amusement to an invitee in that it disregarded its obligation of furnishing a fee paying spectator reasonable protection from injury while attending a baseball game. Especially so when the proprietor by the act of selling the ticket at the entrance designates the seat the spectator is to occupy. The plaintiff's theory is that the defendant's premises were not reasonably safe and that it did not furnish reasonable protection to the plaintiff as an invitee because it failed to fulfill its duty ''to erect some protection across a line running from home plate to any seat in the grandstand to which the public is invited and which is within ordinary reach of a foul ball.'' He says the producer-owner's only escape from this positive obligation is to claim and establish as a matter of law that a spectator-invitee at a baseball game assumes or accepts the risk of being struck by a foul ball. As we understand it, the plaintiff says there is no assumption of the risk of being struck by a foul ball ▮▮▮ under the special circumstance of his being ''under the impression because he had purchased a reserved seat he was protected by a wire netting'' and, therefore, there was an affirmative duty on the proprietor to either protect him from the danger incident to foul balls or to see to it that he had notice of the fact that no screen was present and consequently of the danger so that he might have an opportunity of purchasing a seat behind a screen or of declining to attend the game.

▮ The plaintiff's theory of liability and of his right to recover are the general rules applicable to the relationship existing between the proprietor of a place of public amusement and his invitee, especially the proprietor's duty with reference to the condition of his premises and the activities carried on there. These general principles are

summarized in Berberet v. Electric Park Amusement Co., 319 Mo. 275, 281-282, 3 S. W. (2d) 1025: "The defendant operated the park for profit; and, to these persons who paid the entrance fee and entered, owed the duty to use reasonable care to make every part of it safe. The rule in this State and generally, is, that the proprietor, of a place of public amusement owes to his patrons that duty, which, under the particular circumstances, is ordinary care or reasonable care, for their safety. . . . However, one who invites another to come upon his premises is not an insurer of the safety of such other person; . . . and that general rule applies to proprietors of places of public amusement. . . . The rulings in the cases mentioned show that the care required of the proprietor of a place of public amusement is that which is reasonably adapted to the character of the exhibitions given, the amusements offered, the places to which patrons resort, and also in some cases, the customary conduct of spectators of such exhibitions. It is a care commensurate with the particular conditions and circumstances involved in the given case."

As applied to the condition of the premises see: McCloskey v. Koplar, 329 Mo. 527, 46 S. W. (2d) 557; Oakley v. Richards, 275 Mo. 266, 204 S. W. 505; Nephler v. Woodward, 200 Mo. 179, 98 S. W. 488; King v. Ringling, 145 Mo. App. 285, 130 S. W. 482. The earlier cases and annotations usually dealt with defective conditions in the premises used as a place of public amusement. [See 1 L. R. A. (N. S.) 427; 3 L. R. A. (N. S.) 1132; 14 L. R. A. (N. S.) 284; 19 L. R. A. (N. S.) 772; 32 L. R. A. (N. S.) 713; 42 L. R. A. (N. S.) 1070.] In 1914 cases dealing with the activities carried on at places of public amusement became more numerous and we have the first instances of spectators being injured by and while watching an automobile race, an aeroplane flight and now every conceivable form of entertainment and game. [L. R. A. 1915F, p. 690; 5 Ann. Cas. 926; 15 Ann. Cas. 517; Ann. Cas. 1915B, p. 546; 22 A. L. R. 610; 29 A. L. R. 29; 38 A. L. R. 357; 44 A. L. R. 203; 53 A. L. R. 855; 61 A. L. R. 1289; 98 A. L. R. 557.] For general treatises and law review articles see: 4 Shearman & Redfield, Negligence, pp. 1562-1570; 3 Cooley, Torts, Sec. 440; 1 Thompson, Negligence, Secs. 994-999; 21 Case & Comment, 718-727.

█ The rules as developed and applied to places of public amusement and upon which the parties here rely, whether as to the condition of the premises or the activity being carried on there, are neither more nor less than the usual rules of liability applicable to the possessor of land and his business invitee. "A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, █ if known to him, he should realize as involving an unreasonable risk to them, and (b) has no reason to believe that they

will discover the condition or realize the risk involved therein, and (c) invites or permits them to enter or remain upon the land without exercising reasonable care (1) to make the condition reasonably safe, or (2) to give a warning adequate to enable them to avoid the harm.'' [2 Restatement, Law of Torts, Sec. 343; 118 A. L. R. 425; 100 A. L. R. 710; 58 A. L. R. 136; 46 A. L. R. 1111; 43 A. L. R. 866; 33 A. L. R. 181.] Conversely and as applied to a place of public amusement as well as to a place of business ''the invitor is not an insurer of the safety of the invitee; neither is the invitee protected against all hazard, nor relieved of all duty to himself for his own safety. And to the extent that the duty of self-protection rests upon the invitee, the duty of the invitor to protect is reduced. The extent of these relative duties depends upon many factors involving the capacity and opportunity of the invitor to protect the invitee and the capacity and opportunity of the invitee to protect himself.'' [Ivory v. Cincinnati Baseball Club, 62 Ohio App. 514, 518, 24 N. E. (2d) 837.]

Attention is directed to these general principles because of the attitude of both the plaintiff and the defendant in the instant case and apparently of parties to baseball cases generally. Both parties, relying chiefly on Crane v. Kansas City Baseball & Exhibition Co., 168 Mo. App. 301, 153 S. W. 1076, and Edling v. Kansas City Baseball & Exhibition Co., 181 Mo. App. 327, 168 S. W. 908, which have become leading cases throughout the country, contend, as we understand their contrasting positions, that there are special rules of law applicable to the game of baseball. As we have indicated, the plaintiff says the defendant's legal duty to exercise due care to keep its premises reasonably safe requires it to erect some protection, a wire netting, ''across a line running from home plate to any seat in the grandstand to which the public is invited, and which is within ordinary reach of a foul ball'' or alternately, and before. the doctrine of ''spectator's risk'' applies, give the spectator actual notice and warning of the hazard the spectator is accepting. On the other hand, the baseball club, says its only duty as to foul balls is to provide protected seats for those patrons who desire them and this duty it fulfills by screening a reasonable number of seats. Furthermore, the defendant contends it was under no duty to voluntarily give information to its patrons and warn them that some seats were screened and some were not and that the plaintiff ''by attending the game assumed the risk of being struck by a foul ball.''

Crane v. Kansas City Baseball & Exhibition Co., supra, was tried on an agreed statement of facts. Many of the facts therein stated have subsequently been accepted as matters of ''common knowledge,'' and even as legal principles applicable to every baseball case. In that case there were no reserved seats and the plaintiff, probably a baseball ''fan,'' at least a regular attendant, chose a seat in an unprotected area and during the progress of the game was struck by a foul ball.

The court held that since he had a choice of protected and unprotected seats and full knowledge of the hazards of the game he assumed the risk of being struck by a foul ball and was therefore not entitled to recover. As to the proprietor's duty to provide safeguards for its spectators the court said, 168 Mo. App., l. c. 304:

"In view of the facts that the general public is invited to attend these games, that hard balls are thrown and batted with great force and swiftness, and that such balls often go in the direction of the spectators, we think the duty of defendants towards their patrons included that of providing seats protected by screening from wildly thrown or foul balls for the use of patrons who desired such protection."

This statement has been subsequently quoted with approval and applied except upon the appearance of special or unusual circumstances, as when a foul ball came through a rotten screen and struck a spectator sitting in the screened area; or when temporary seats had been erected between home plate and the grandstand for a World Series and a person who had never before seen a ball game was injured by a foul ball hitting the front railing of a box in that area, or when a person was struck while in an unprotected aisle in the screened area. [Edling v. Kansas City Baseball & Exhibition Co., 181 Mo. App. 327, 168 S. W. 908; ▇▇▇▇ Grimes v. American League Baseball Co. (Mo. App.), 78 S. W. (2d) 520; Olds v. St. Louis National Baseball Club, 232 Mo. App. 897, 104 S. W. (2d) 746, 119 S. W. (2d) 1000.]

Space may be conserved and time saved by classifying the game cases (baseball and hockey) upon which the defendant relies on the basis of their rationale, especially so since it is contended they establish legal principles applicable to baseball only. In these cases the presence or absence of the indicated elements were considered as decisive.

Knowledge, assumed risk and choice were all present in the following cases: Crane v. Kansas City Baseball & Exhibition Co., supra; Blackhall v. Capitol District Baseball Assn., 278 N. Y. S. 649; Cincinnati Baseball Club v. Eno, 112 Ohio St. 175, 147 N. E. 86; Kavafian v. Seattle Baseball Club, 105 Wash. 215, 181 Pac. 679; Quinn v. Recreational Park Assn., 3 Cal. (2d) 725, 46 Pac. (2d) 144.]

Assumed risk alone decided these cases: Brisson v. Minneapolis Baseball & Athletic Assn., 185 Minn. 507, 240 N. W. 903 (and here one of very limited knowledge of the game); Lorino v. New Orleans Baseball & Amusement Co., Inc., 16 La. App. 95, 133 So. 408; Hammel v. Madison Square Garden Corp., 279 N. Y. S. 815; Ingersoll v. Onondaga Hockey Club, 281 N. Y. S. 505. Assumed risk prevented recovery to an uninitiated and inattentive spectator injured by a foul ball in the sixth inning in Keys v. Alamo City Baseball Co. (Tex.), 150 S. W. (2d) 368.

The combined elements of knowledge and choice was decisive in Cates v. Cincinnati Exhibition Co., 215 N. C. 64, 1 S. W. (2d) 131.

Knowledge and assumed risk seemed to control in Williams v. Houston Baseball Assn. (Tex.), 154 S. W. (2d) 874; Zeitz v. Cooperstown Baseball Centennial, Inc., 29 N. Y. S. (2d) 56.

The defendant's inability to anticipate that a foul ball would curve around the screened portion of the grandstand relieved it of liability in Curtis v. Portland Baseball Club, 130 Ore. 93, 279 Pac. 277.

While Paxton v. Buffalo International Baseball Club, 9 N. Y. S. (2d) 42, simply held the defendant was not negligent in failing to furnish a screen at a night baseball game.

Some of these cases say that baseball is not free from peril to the spectator but that the game is not so obviously dangerous as to require a screen for the whole of the grandstand and the bleachers. [Cates v. Cincinnati Exhibition Co., supra; Cincinnati Baseball Club v. Eno, supra.] While other cases say there is no duty on the proprietor of a baseball park to screen seats for all who apply for such seats but its duty is to guard against the most dangerous part only and screen that part of the grandstand immediately behind home plate. [Brisson v. Minneapolis Baseball & Athletic Assn., supra; Curtis v. Portland Baseball Club, supra; Keys v. Alamo City Baseball Club, supra.]

In passing it is interesting to note that a New York court thought the Crane case and baseball cases generally applicable to a spectator injured at a hockey game when a puck came over the unscreened side of the rink. While a Rhode Island court considered the baseball cases inapplicable to a hockey game. See and compare: Hammel v. Madison Square Garden Corp., supra; James v. Rhode Island Auditorium (R. I.), 199 Atl. 293; Shanney v. Boston Madison Square Garden Corp. (Mass.), 5 N. E. (2d) 1.

It will be observed in the instant case that the plaintiff has sought to place his case just outside the rationale of all these cases. He says that while he acknowledged the hazards of spectator injury at a ball game he always sat in a reserved seat and thereby found himself behind a screen, that he intended to sit behind a screen on this occasion, and because of his past experience thought he was doing so, therefore, he did not have actual knowledge of the danger. Furthermore, when he purchased his "best reserved seat" he was not given an opportunity to choose and therefore the defendant was under a duty to warn him of the danger before he could be said to have assumed the risk of injury from foul balls.

We do not disagree with the reasoning of any of the above cases but it is our view that the rules applicable to and governing the relationship of the possessor of land and his business invitee, generally, govern the correlative rights, duties, obligations and liabilities of the owner of a baseball park or the exhibitor of a baseball game and the spectator. The fact that the injury was sustained at a place of public

amusement or by the activity carried on there is only a circumstance to be considered in determining whether or not the proprietor exercised due care for the safety of his patron. ''The proprietor (of a place of public amusement) owes to his patrons that duty, which, under the particular circumstances, is ordinary care or reasonable care for their safety.'' The care required is ''that which is reasonably adapted to the character of the exhibitions given, the amusements offered, the places to which patrons resort, and also in some cases, the customary conduct of spectators of such exhibitions. It is a care commensurate with the particular conditions and circumstances involved in the given case.'' [Berberet v. Electric Park Amusement Co., supra; King v. Ringling, supra; 5 Ann. Cas. 926, 927-928.]

 One of the circumstances incident to some forms of public amusements or sports is that the patron actually and actively takes part in them, for example skating or the thrill devices in an amusement park. Then, as Mr. Justice CARDOZO said of the patron injured on a ''Flopper,'' ''A fall was foreseen as one of the risks of the adventure. There would have been no point to the whole thing, no adventure about it, if the risk had not been there. . . . One who takes part in such a sport accepts the dangers that inhere in it so far as they are obvious and necessary, just as a fencer accepts the risk of a thrust by his antagonist or a spectator at a ball game the chance of contact with the ball. . . . A different case would be here if the dangers inherent in the sport were obscure or unobserved or so serious as to justify the belief that precautions of some kind must have been taken to avert them.'' [Murphy v. Steeplechase Amusement Co., 250 N. Y. 479, 481, 482, 483, 166 N. E. 173.] In baseball the patron participates in the sport as a spectator only, but in so doing subjects himself to the dangers necessarily and usually incident to and inherent in the game. This does not mean that he ''assumes the risk'' of being injured by the proprietor's negligence but that by voluntarily entering into the sport as a spectator he knowingly accepts the reasonable risks and hazards inherent in and incident to the game. [Bohlen, Studies in The Law of Torts, pp. 441-444.]

 Applying the general rules applicable to the relationship of the proprietor of land and his business invitee to the instant case, we are of the opinion that the plaintiff's petition does not plead facts constituting a set of special circumstances, which if true, demonstrate negligence on the part of the defendant as the owner and operator of a baseball park or as the producer of a baseball game.

The plaintiff after fully and completely describing the baseball diamond and grandstand, including the wire netting back of home plate, says: ''That in the game of baseball there exists the constant hazard of foul balls driven with great force into the grandstand pro-

vided for spectators" and that this is well known to the owners and operators of baseball parks. "That in the course of several years . . . this plaintiff from time to time had attended baseball games and paid admission at said park and had invariably, in purchasing a reserved seat, found himself according to his experience seated behind such wire netting and had formed the reasonable conclusion that reserved seats generally were a classification of seats protected by wire netting." Without doing violence to the drawing of inferences, we may safely assume from this that though he was not a baseball "fan," in the sense of being an enthusiastic devotee, he was more than a casual attendant and therefore familiar with the facts set forth in his petition, namely, that part of the grandstand was screened and part of it was not screened and that there was a constant hazard of foul balls being driven into the grandstand. While his petition does not specifically state that he knew these facts of baseball, yet, apart from and included in the allegations upon which he relies as exculpating himself of such knowledge, there is no other reasonable conclusion but that he was familiar with the ordinary risks and hazards inherent in and incident to spectator participation in a baseball game.

The rules governing the land proprietor's duty to his invitee presuppose that the possessor knows of the condition and "has no reason to believe that they (his invitees) will discover the condition or realize the risk involved therein." [2 Restatement, Law of Torts, Sec. 343.] The basis of the proprietor's liability is his superior knowledge and if his invitee knows of the condition or hazard there is no duty on the part of the proprietor to warn him and there is no liability for resulting injury because the invitee has as much knowledge as the proprietor does and then by voluntarily acting, in view of his knowledge, assumes the risks and dangers incident to the known condition. [State ex rel. First National Bank v. Hughes, 346 Mo. 938, 144 S. W. (2d) 84; Murray v. D'Oench, 347 Mo. 365, 147 S. W. (2d) 623; Paubel v. Hitz, 339 Mo. 274, 96 S. W. (2d) 369.]

As applied to a person familiar with baseball this does not mean "common knowledge" or that there is a minimum standard of knowledge imputable to the ordinary person (23 Minn. L. R. 628, 641) but means actual knowledge. "It is not necessary in this case to rely on imputing things of common knowledge to the plaintiff. Her testimony shows she had full and complete actual knowledge. That knowledge dispensed with any necessity for notice or warning to her. . . . 'A party cannot complain of the lack of warning of conditions involving danger to himself, when he has as full knowledge of such conditions as if he had been apprised of them.'" [Ivory v. Cincinnati Baseball Club, 62 Ohio App. 514, 520, 24 N. E. (2d) 837.] The rule as applied to baseball was properly enforced in Brummerhoff v. St. Louis Nat. Baseball Club (Mo. App.), 149 S. W. (2d) 382, where

the plaintiff looked for a screened seat but was unable to find one and was injured during batting practice while sitting in an unscreened area. The court appropriately said, 1. c. 384:

"In our opinion no negligence was shown by the evidence. The facts disclose that the exhibition which plaintiff attended was being conducted under the usual and ordinary conditions customarily prevailing in ball parks, and that while plaintiff was exposed to danger, it was a danger necessarily incident to the exhibition, of which plaintiff, according to his own evidence, was well aware."

Neither do we think the plaintiff's alleged special circumstances or his specific allegations of negligence aid him in this respect. A business invitee may not recover for a condition as well known to him as it is to his invitor and neither may he impose liability on the owner or proprietor by failing and neglecting to see and observe that which is perfectly open and obvious to a person in possession of his faculties. [Ilgenfritz v. Missouri P. & L. Co., 340 Mo. 648, 101 S. W. (2d) 723; Stoll v. First National Bank, 345 Mo. 582, 134 S. W. (2d) 97; Mullen v. Sensenbrenner (Mo.), 260 S. W. 982.]

The plaintiff says he was "subject to the ordinary impairments of eyesight" of a man sixty-four years of age, but he does not say his vision was so impaired that he could not see that which was plainly before him. By reason of his attending the game we do not suppose he would have us infer that his allegation means anything less than that his vision was that of the ordinary person of that age and that he could see the obvious.

■ Because of the special circumstances of his intention, his past experience and his impression he says the defendant was therefore negligent in not screening a specified area of the grandstand; in selling seats without a definite classification and notice as to whether they were screened or not; in selling reserved seats of both classes of seats, screened and unscreened, and thereby creating a false impression that a reserved seat was protected and in giving the plaintiff reason to believe a screened seat would be protected and in failing to notify him that the designated seat he purchased was unscreened.

Assuming that all the plaintiff's allegations are true, yet there is nothing in them indicating that he was not fully aware of the obvious fact that he was sitting in an unscreened area of the grandstand and subject to the well known personal hazards of a ball game, especially that of being hit by a foul ball. Even though the defendant did not screen a given section of the grandstand, even though there may have been some confusion about the manner of the defendant's selling seats, etc., yet the plaintiff while watching the game "which was then going on" (he does not say how long) must have seen that he was not sitting behind a wire screen. Despite his allegations of negligence we yet have a condition so open and obvious that it was apparent or would have been had he been looking. Because of these allegations he

cannot be said to have lost his former knowledge of the facts of baseball, the hazards and perils usually incident to the game, as well as the position of the spectator. The most that can be said for the special circumstances of his past experience, his present intention and impression is that he knew he was sitting in an unscreened area where he might be struck by a foul ball, but simply forgot it or ignored the fact, neither of which is excused by his allegations. [Murray v. D'Oench, supra; Quinn v. Recreation Park Assn., 3 Cal. (2d) 725, 46 Pac. (2d) 144.] He, therefore, voluntarily elected to watch the game with full knowledge of the dangers incident to it and of the possibility of injury to himself and his petition does not contain averments of special circumstances, which if true, would entitle him to recover.

The judgment is affirmed. *Westhues* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by Barrett, C., is adopted as the opinion of the court. All the judges concur.