[No. 31570. Department Two. March 29, 1951.]

WILLIAM J. LEEK, *Appellant*, v. TACOMA BASEBALL CLUB, INC., *Respondent*.[1]

[1]Reported in 229 P. (2d) 329.

*Clarence E. Layton* and *L. B. Sulgrove,* for appellant.

*Dix H. Rowland* and *Burton W. Lyon, Jr.,* for respondent.

HAMLEY, J.—William J. Leek brought this action against Tacoma Baseball Club, Inc., to recover damages for serious personal injuries sustained when he was struck by a foul ball while watching a baseball game in defendant's baseball park. The cause was tried to the court without a jury. At the conclusion of plaintiff's case, defendant moved for dismissal. The motion was granted, and judgment was accordingly entered for defendant. Plaintiff has appealed.

The evidence, when viewed in a light most favorable to appellant, discloses the following facts: On the evening of August 4, 1949, Leek purchased a grandstand ticket and entered the ball park for the purpose of watching a baseball game between the Kansas City Monarchs and the House of David. It was after eight o'clock p. m., daylight saving time, when Leek entered the park, and the game was already in progress. It was then twilight, but the flood lights had not yet been turned on. He was directed by the usher to the section immediately behind home plate. His reserved seat was in the fourth row from the front and a little to the left of center. This seat was behind a vertical wire screen which was twenty-six feet high and thirty-four feet wide. The grandstand was not roofed, and there was no screen overhead. Appellant did not look to see if there was any overhead protection, but assumed that there was such protection. He had never before been in this baseball park.

A short time after appellant had taken his seat, a batter hit a high foul into this section of the grandstand. Appellant watched the ball start up, but the night was hazy and he lost sight of it. He turned around, and just then the ball struck him in the head. Appellant was rendered unconscious, and was taken to a hospital by police officers. He

there regained consciousness, and was taken back to the ball park to get his car. He went into the park again for a few minutes, but felt dizzy and had a headache, so left and drove home.

At the time of the accident, appellant was sixty-five years of age and a carpenter by trade. He had played baseball as a boy, and had seen games infrequently since that time. He had watched a Pacific Coast League game at the Seattle baseball park a few weeks before the accident. While appellant wore glasses, he had normal vision for a man of his age. An officer of respondent corporation, called by appellant, testified that from five to eight foul balls drop into the stands at every game. It is not unusual for these fouls to drop into the stands immediately behind home plate.

The only question presented on this appeal is whether, under these facts, respondent is liable for the injuries sustained by appellant.

It is uniformly held that the operator of a baseball park, although not an insurer of the safety of its patrons, is bound to exercise reasonable care, or that care commensurate to the circumstances, to protect its patrons against injury. *Crane v. Kansas City Baseball & Exhibition Co.*, 168 Mo. App. 301, 153 S. W. 1076; *Curtis v. Portland Baseball Club*, 130 Ore. 93, 279 Pac. 277; *Ivory v. Cincinnati Baseball Club Co.*, 62 Ohio App. 514, 24 N. E. (2d) 837; 142 A. L. R. 868, 869, annotation.

Applying this rule to factual situations of the kind here presented, it is now settled that the proprietor has the duty of screening some grandstand seats. *Crane v. Kansas City Baseball & Exhibition Co., supra; Cincinnati Base Ball Club v. Eno*, 112 Ohio St. 175, 147 N. E. 86; *Quinn v. Recreation Park Ass'n*, 3 Cal. (2d) 725, 46 P. (2d) 144; *Olds v. St. Louis Nat. Baseball Club*, 119 S. W. (2d) 1000; *Ratcliff v. San Diego Baseball Club*, 27 Cal. App. (2d) 733, 81 P. (2d) 625.

There is no obligation to screen all such seats, however, and the proprietor's duty is fulfilled when screened seats are provided for as many as may reasonably be expected

to call for them on any ordinary occasion. *Wells v. Minneapolis Baseball & Athletic Ass'n,* 122 Minn. 327, 142 N. W. 706, 46 L. R. A. (N.S.) 606; *Cincinnati Baseball Club v. Eno, supra; Brisson v. Minneapolis Baseball & Athletic Ass'n,* 185 Minn. 507, 240 N. W. 903; *Quinn v. Recreation Park Ass'n, supra; Olds v. St. Louis Nat. Baseball Club, supra; Ratcliff v. San Diego Baseball Club, supra.*

Appellant here does not appear to contest these general principles. He argues, however, that respondent provided *no* seats which were effectively screened, and that there was accordingly a failure of the proprietor to perform his established duty of providing some screened seats. The question thus comes down to this: Did the proprietor, in providing a perpendicular screen twenty-six feet high in front of the seats immediately behind home plate, fulfill his duty to provide some screened seats, or was it necessary to also provide overhead protection for such seats?

We have found only two cases where the necessity of providing overhead protection has been discussed. These are *Lorino v. New Orleans Baseball & Amusement Co.,* 16 La. App. 95, 133 So. 408; and *Cates v. Cincinnati Exhibition Co.,* 215 N. C. 64, 1 S. E. (2d) 131, in each of which the defendant was relieved from liability. These cases are not particularly helpful here, however, as each of them involved injuries which occurred in bleacher seats situated a long distance from home plate.

Lacking a precedent on the factual situation, we turn to general principles. Basic in the law of negligence is the tenet that the duty to use care is predicated upon knowledge of danger, and the care which must be used in any particular situation is in proportion to the actor's knowledge, actual or imputed, of the danger to another in the act to be performed. *Burr v. Clark,* 30 Wn. (2d) 149, 190 P. (2d) 769; 38 Am. Jur. 678, Negligence, § 32; 65 C. J. S. 351, Negligence, § 5.

■ This principle is an integral part of the law relating to the liability of owners or occupants of premises. Generally speaking, the possessor of land is liable for injuries

to a business visitor caused by a condition encountered on the premises only if he (a) knows or should have known of such condition and that it involved an unreasonable risk; (b) has no reason to believe that the visitor will discover the condition or realize the risk; and (c) fails to make the condition reasonably safe or to warn the visitor so that the latter may avoid the harm. *Hudson v. Kansas City Baseball Club*, 349 Mo. 1215, 164 S. W. (2d) 318, 142 A. L. R. 858; 2 Restatement of Torts 938, § 343; 38 Am. Jur. 754, Negligence, § 96; 65 C. J. S. 521, Negligence, § 45.

Respondent baseball club, of course, knew that the seats immediately behind home plate were not provided with overhead protection. But did respondent have reason to believe that this lack of overhead protection involved an "unreasonable risk" of injury to the patrons?

This would seem to be a jury question, had there been a jury. There was no jury, and the cause was dismissed at the close of appellant's case, so that no findings of fact are before us. It is therefore a question which we must determine *de novo*, on the basis of the plaintiff's evidence, summarized above.

In our opinion, under the facts of this case, respondent did not have reason to believe that the lack of overhead protection involved an unreasonable risk of injury to appellant. It was not uncommon for foul balls to drop over the vertical screen into this section of the stand. However, there is nothing in the record, aside from this one incident, or in common experience, to indicate that foul balls of this kind cause serious injuries with sufficient frequency to be considered an unreasonable risk.

So-called foul tips, going into adjacent stands without gaining any considerable elevation, are known to be dangerous, because their speed makes avoidance difficult and serious injury more likely. Foul balls which go high enough to clear a twenty-six-foot screen however (and the ball in question apparently went much higher), take longer to reach the seats, and are therefore easier to dodge or catch. If unsuccessful in this, the spectator is usually not seriously

injured, because the driving force of the ball is gone and there is left only the force of gravitation. The fact that in this case a serious injury did result is not controlling. The question is whether the proprietor had reason to believe, *before the accident happened,* that lack of overhead protection would unreasonably endanger appellant.

While the baseball cases cited above do not involve factual situations similar to the case before us, several of them, in discussing the necessity of screening some seats, employ reasoning which lends support to the views expressed above. Thus, in *Wells v. Minneapolis Baseball & Athletic Ass'n,* it is stated that "the perils are not so imminent" that due care on the part of the management requires all the spectators to be screened in. In *Grimes v. American League Baseball Co.,* 78 S. W. (2d) 520, the court said that "the perils of the game are not so great" as to require the screening of all seats. In *Curtis v. Portland Baseball Club,* where the plaintiff contended that a foul ball had curved around the end of a screen, the court held that the accident was one which "could not reasonably have been anticipated." In *Cincinnati Baseball Club v. Eno,* it was said that the proprietor had the duty not to lead its invited guests "into unusual danger." In *Hull v. Oklahoma City Baseball Co.,* 196 Okla. 40, 163 P. (2d) 982, the court absolved the defendant on the ground that "there was no unreasonable risk" not appreciated by the plaintiff as a spectator.

Applying any of these quoted tests as to the duty to provide protective screening, we conclude that respondent was not, with respect to appellant, under a duty to provide overhead protection on the occasion in question.

Appellant further argues, however, that having undertaken to provide some screening for the seats in question, the proprietor impliedly assured the spectators who paid for admission to the screened grandstand that seats behind the screen were reasonably protected from the known hazards of the game. In support of this proposition, appellant cites *Wells v. Minneapolis Baseball & Athletic Ass'n,*

*supra*, and *Edling v. Kansas City Baseball & Exhibition Co.*, 181 Mo. App. 327, 168 S. W. 908.

In the *Wells* case, the screen extended to the grandstand roof. The plaintiff claimed to have been seated ten feet within the area behind the screen, but that a foul ball curved around the end of the screen and struck her. Holding for the defendant as a matter of law, the court stated, among other things, that where the proprietor undertakes to screen, the screen must be "reasonably sufficient as to extent and substance." No question was presented as to whether this required overhead protection, the court simply ruling that lateral screening was adequate under the facts of the case. In the *Edling* case, the plaintiff, while sitting in a screened section immediately behind home plate, was struck by a foul ball which passed through a large hole in the wire netting. It was in this connection that the court, in sustaining a verdict for the plaintiff, stated that the proprietor "impliedly assured spectators" who paid for admission to the grandstand that seats behind the screen were reasonably protected.

We are in full agreement with the rule as announced in these cases. It must be apparent, however, that this implied assurance of protection has reference only to those hazards against which the screen is obviously designed to protect. Just as the screening of seats in the *Wells* case was held not to constitute an implied assurance that foul balls would not curve around the end of the screening, so here, the twenty-six foot vertical screen gives rise to no assurance that foul balls may not go over the top of the screen and drop into the stands. It is true that the curving of a foul ball around the end of the screen is a highly improbable occurrence, while the dropping of fouls behind vertical screens is relatively frequent. The point is, however, that in each case the obvious limits of the protection afforded are open and apparent to all patrons, and in no sense constitute a trap for the unwary.

We have in mind, of course, that appellant here did not actually know that there was no overhead screening, and

assumed that such protection was provided. Appellant's failure to observe what was plainly there to be observed cannot, however, operate to enlarge respondent's duty of care beyond that which it would otherwise be. The proprietor was entitled to assume that patrons walking into the grandstand would note that there was no roof, and hence nothing to which overhead screening could attach.

A somewhat similar contention was advanced in *Hudson v. Kansas City Baseball Club*, 349 Mo. 1215, 164 S. W. (2d) 318, the plaintiff there claiming that he was under the impression that there was screening between him and home plate. In affirming a judgment for the defendant, the court said:

"A business invitee may not recover for a condition as well known to him as it is to his invitor and neither may he impose liability on the owner or proprietor by failing and neglecting to see and observe that which is perfectly open and obvious to a person in possession of his faculties. [Citing cases.]" (p. 1226.)

In our opinion, respondent is not liable to appellant on any theory that the presence of the vertical screen constituted an implied assurance to appellant that overhead protection was provided, or was unnecessary.

Our disposition of the case makes it unecessary to consider whether, in any event, appellant was contributorily negligent or assumed the risk with regard to the injuries suffered. It is only on this latter point that the one Washington case involving injuries in a baseball park (*Kavafian v. Seattle Baseball Club Ass'n*, 105 Wash. 215, 177 Pac. 776, 181 Pac. 679) is pertinent.

The judgment is affirmed.

SCHWELLENBACH, C. J., ROBINSON, MALLERY, and GRADY, JJ., concur.