Robert J. MORAN, Plaintiff-Respondent,

v.

Marion C. HARTENBACH and Claude Wheeler, Defendants-Appellants.

No. 32705.

St. Louis Court of Appeals.

Missouri.

Nov. 21, 1967.

Rehearing Denied Dec. 26, 1967.

Richard M. Stout, Heneghan & Roberts, Robert G. Burridge, St. Louis, for defendants-appellants.

Ziercher, Tzinberg, Human & Michenfelder, Robert C. Jones, George J. Bude, Clayton, for plaintiff-respondent.

PER CURIAM.

By this action plaintiff sought to recover $50,000 for personal injuries and damages alleged to have been sustained from a fall in a building owned by defendant Hartenbach and occupied by defendant Wheeler. Trial to a jury resulted in a verdict and judgment for $2000 against both defendants, from which they appeal.

The building in question was known and numbered as 1163 South Kingshighway Boulevard in the City of St. Louis, and was located on the west side of that street, facing east. Defendant Wheeler had occupied it since 1960 under a written lease from Hartenbach (not introduced in evidence) and operated a muffler shop therein. The building was a one-story structure constructed of concrete blocks, had a flat roof about 15 feet high, and was divided into two areas by a firewall of concrete blocks extending from the north to the south wall. Wheeler used the front or east area as his showroom and the back or west area as his shop.

Two offices were located in the shop area, termed by the witnesses as the "main" office and the "protruding" office, the tops

of which were about 6 feet below the roof of the building. It is difficult to determine from the transcript the precise location of these offices because early in his testimony plaintiff drew a floor plan of the interior of the building on a blackboard, not filed here as an exhibit, and thereafter points or objects were described as being located "here" and "there" on the diagram. As best we can deduce from the transcript and plaintiff's photographs the two connected offices were situated towards the south end of the shop area, adjacent to the dividing firewall. It also appears that a skylight approximately 5 or 6 feet wide and 40 or 50 feet long, extending in a north-south direction, was set in that part of the roof over the shop area.

Late in June or early in July, 1962, Wheeler requested Hartenbach to make various repairs to the building, including the skylight, the windows of which leaked when it rained. At Hartenbach's request plaintiff, a general contractor, accompanied Hartenbach to the building early in July, 1962, for the purpose of ascertaining the work to be done and the cost thereof. Subsequently plaintiff submitted a figure to Hartenbach and was told to go ahead with the repairs. Thereafter plaintiff remembered that during his inspection trip with Hartenbach he had seen some window sash stored on a catwalk beneath the skylight and telephoned Hartenbach about it. Hartenbach told plaintiff that if the sash could be used and money thereby saved he would appreciate it. Hartenbach also informed plaintiff that if plaintiff wanted to contact or speak to anyone at the building he could speak to "the manager," Mr. Wheeler.

Plaintiff went to the building on July 20, 1962, introduced himself to Wheeler, and told Wheeler that Hartenbach had asked him to make the repairs and that he wanted to check the window sash on the catwalk. Wheeler advised plaintiff to go up on top of the offices, from which point he could climb onto a beam and then to the catwalk. When plaintiff replied that he didn't know

how to get up there Wheeler offered to show him and led plaintiff up some steps situated alongside the "right" side of the main office. From the head of the steps they walked across the top of the main office to a point where the top of the protruding office joined the top of the main office. This juncture of the two roofs was surmounted by a wooden barrier, about 2 feet high, which began several feet west of the firewall and ran westwardly. When they reached that point they stopped and plaintiff asked Wheeler how he could get from there to the catwalk beneath the sky-light. Wheeler answered, according to plaintiff, " 'You walk out and swing up on top of the beam and get up on the catwalk'."

The "beam" to which Wheeler referred was in reality two 1½ or 2 inch iron bars, separated by a few inches, which ran from the north to the south walls of the building in the shop area. The central part of the bars were about 18 or 24 inches above the top of the protruding office and approximately 4 feet below the roof of the building, but at unstated distances from the north and south walls the bars angled upward. Adjacent to such angles steel columns rested on the bars and supported a wooden beam beneath the roof of the building. Each of the bars had a turn buckle which could be tightened, and the function of the bars, as plaintiff explained it, was to " * * keep pressure on the building."

The top of the main office, across which plaintiff and Wheeler first walked after ascending the stairs, was covered with a wooden floor. As to the top of the protruding office, a wooden walkway extended northwardly from the juncture of the two roofs, the east edge of the walk-way being against the firewall and the west edge directly beneath the iron bars. The ceiling of the protruding office consisted of a dry-wall, fiber board material like celotex, which was nailed to the bottom of the joists, so that from the west edge of the walkway the joists over the protruding office were exposed and visible to one on top of the offices.

When plaintiff stopped and propounded his question to Wheeler he was standing at the northern edge of the top of the main office, at a point just west of the iron bars. He was then facing north, towards the top of the protruding office. Asked by his counsel, "Then what did you do?" he answered, "I took one step and went through." It is obvious from his own testimony and his exhibits that he stepped between the exposed joists, onto the fiber board ceiling over the protruding office, which broke, causing him to fall through the ceiling and to the floor of that office.

Plaintiff alleged in his petition that Wheeler was the agent of Hartenbach for the purpose of showing plaintiff the portion of the building needing repairs and by Instruction No. 2 submitted his case against Hartenbach on that theory. As to Wheeler, by Instruction No. 5 plaintiff submitted his case on the theory that he was on the premises as Wheeler's invitee. The only specification of negligence mentioned in both instructions is the failure to warn plaintiff that, "The roof over the protruding office on the said premises was so constructed that the fiber board ceiling underneath the floor joists was not protected by wooden flooring * * *." We observe in passing that neither instruction is a model but need not discuss their deficiencies since no claim of prejudicial error is made by either defendant. Both defendants assert that the trial court erred in overruling their respective motions for a directed verdict at the close of all the evidence, first, because there was no actionable negligence shown in that the condition on which plaintiff relied, the lack of a wooden flooring on the joists over the protruding office, was so open and obvious that there was no duty to warn plaintiff of such condition; and second, because plaintiff's own evidence showed that he was guilty of contributory negligence as a matter of law. Hartenbach contends, in addition, that the evidence did not show that Wheeler was his agent, and Wheeler, for his part, maintains that plaintiff was only a licensee to whom he was under no duty to give a warning. Because

of the conclusions we have reached as to the points common to both defendants it is unnecessary to rule the latter contentions, and for the purposes of this opinion we shall assume that Wheeler was Hartenbach's agent and that plaintiff occupied the status of business visitor or invitee as to both defendants.

The owner or occupant of land is not an insurer of the safety of even a business invitee. Gruetzemacher v. Billings, Mo., 348 S.W.2d 952; Heine v. John R. Thompson Co., Mo., 330 S.W.2d 867; Lindquist v. S. S. Kresge Co., 345 Mo. 849, 136 S.W.2d 303. The true basis of the owner's or occupant's liability is his superior knowledge of an unreasonable risk of harm of which the invitee, in the exercise of ordinary care, does not or should not know. Harbourn v. Katz Drug Co., Mo., 318 S.W.2d 226, 74 A.L.R.2d 938; Stafford v. Fred Wolferman, Inc., Mo., 307 S.W.2d 468; Capobianco v. Yacovelli Restaurant, Inc., Mo.App., 360 S.W.2d 302. Thus the alternative duty to keep the premises in a reasonably safe condition for an invitee or to warn him of the dangerous condition, 2 Restatement of the Law of Torts, § 343, p. 938, applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls and the like, in that they are known to the inviter but not known to the invitee, and would not be observed by the latter in the exercise of ordinary care. Harbourn v. Katz Drug Co., supra; Dixon v. General Grocery Co., Mo., 293 S.W.2d 415; Small v. Ralston-Purina Co., Mo.App., 202 S.W.2d 533. And where the condition relied on is so open and obvious that it is or should be as apparent to the invitee as it is to the owner or occupant there is no duty on the latter to warn the invitee of the condition, and he is not liable for injuries resulting from such an open and obvious condition. Sellens v. Christman, Mo., 418 S.W.2d 6; Douglas v. Douglas, Mo., 255 S.W.2d 756; Murray v. Ralph D'Oench Co., 347 Mo. 365, 147 S.W.2d 623; Ilgenfritz v. Missouri Power & Light Co., 340 Mo. 648, 101 S.W.2d 723.

Plaintiff's own testimony as well as his exhibits make it crystal clear that the condition of which he claims he should have been warned, the lack of flooring over the roof of the protruding office at the place where he stepped, was so open and obvious that it was or should have been readily apparent to him. The point where he stopped before he took his crucial step was only inches away from where he fell. From the former point the naked roof joists of the protruding office were plainly visible. The fact that the ceiling material was fastened to the bottom of such joists was likewise apparent. Plaintiff was an experienced general contractor and testified that in the course of his work he had installed accoustical tile ceilings over celotex. What is more important, he also testified on cross-examination that the fiber board ceiling nailed to the bottom of the joists was of a type readily recognizable as such if one looked at it, and that he was aware that such ceiling material would not support the weight of a man. Plaintiff testified the only light was from the skylight but no claim was made by him that the light therefrom was so insufficient that he was unable to see the nature of the construction of the ceiling or where he was stepping. To the contrary, plaintiff testified that the accident occurred about 10:00 or 10:30 A.M. on an average summer (July) day; that the point where he fell was only 6 feet below, and only 10 or 12 feet in a direct line from the edge, of the very large skylight set in the roof of the building; that in proceeding from the head of the stairway and across the flooring over the main office, an area more distant from the skylight than where he fell, he had to pick his way over mufflers and tailpipes which were stored thereon; and that the light in that area was sufficient for him to plainly see and avoid stepping on such objects. Further, while plaintiff alluded in his testimony to dust on top of the offices and to mufflers and tailpipes scattered around the general area, he did not assert that there were any such obstructions in the immediate area where he fell or that they prevented him from seeing the nature of the ceiling of the protruding office and the place where he stepped. Lastly, no contention was made by plaintiff that his attention was diverted and that while so distracted he took the fatal step. In fact, he related that when he stopped at the edge of the juncture of the two roofs he was facing north, towards the roof over the protruding office, and on cross-examination he testified:

"Q. Were you looking where you were stepping? A. Yes, sir. Q. Or were you looking up to where you were going? A. No, I was looking where I was stepping." In short, the facts presented by plaintiff's own evidence are that the absence of flooring over the place where he stepped was open and obvious and was or should have been readily apparent to him. Under comparable circumstances it has been uniformly held that there is no duty to warn because the invitee has or should have had the information which would be conveyed by a warning. Sellens v. Christman, Mo., 418 S.W.2d 6; Rush v. Townsend & Wall Co., Mo., 343 S.W.2d 44; Howard v. Johnoff Restaurant Co., Mo., 312 S.W. 2d 55; Wilkins v. Allied Stores of Missouri, Mo., 308 S.W.2d 623; Hudson v. Kansas City Baseball Club, 349 Mo. 1215, 164 S.W. 2d 318, 142 A.L.R. 858; Stoll v. First National Bank of Independence, 345 Mo. 582, 134 S.W.2d 97; Ilgenfritz v. Missouri Power & Light Co., 340 Mo. 648, 101 S.W. 2d 723.

We are also inclined to the view that under plaintiff's own evidence he was guilty of contributory negligence as a matter of law in failing to see the condition of which he complains and in stepping between the joists and upon the ceiling material when he knew or should have known that it would not bear the weight of a man. See Smith v. Alaskan Fur Co., Mo., 325 S.W.2d 740. But as was so aptly said of a female invitee in Ilgenfritz v. Missouri Power & Light Co., 340 Mo. 648, 101 S.W.2d 723, 728, " * * * whether she was careful or not,

or whether her conduct was contributory negligence or not, makes no real difference, because there is no evidence to show that defendant was guilty of any negligence, and, even if plaintiff was careful, defendant is only liable if it was negligent. * * *"

It follows that the judgment against the defendants should be and is reversed.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.