PAUL FEARSON SHORTRIDGE, by ELEANOR F. SHORTRIDGE, Guardian, Respondent, v. THE SCARRITT ESTATE COMPANY, Appellant.

Kansas City Court of Appeals, June 28, 1910.

1. NEGLIGENCE: Office Buildings: Injury to Child by Elevator: Contributory Negligence. Plaintiff, a boy eleven and one-half years old, went with his mother to see a tenant in defendant's office building, which was in use, but not fully completed. Plaintiff wandered to an elevator shaft which was guarded by doors in which the glass panels were not yet inserted. Out of curiosity plaintiff put his head in the opening left for one of these panels, and was struck and injured by the elevator. The question of defendant's negligence in leaving the door in that condition, and the question of plaintiff's negligence in putting his head in the opening, were for the jury.

2. ———: ———: ———. If only adults had been expected to visit defendant's building, defendant would not have been negligent in operating an elevator under such circumstances, for

defendant would not be bound to anticipate and guard against the possibility of a mature person voluntarily thrusting any part of his body in a place of such probable danger. Where there is no breach of duty there is no negligence. So, also, if plaintiff had been an adult, and had thrust his head into this opening, his injury would have been chargeable to his own contributory negligence.

3. ———: ———: ———. An infant is not to be held to the exercise of a sound judgment but to that reasonably to be expected of one of his years and apparent mental capacity.

4. ———: ———. While the halls of defendant's office building were not public play grounds, yet the defendant was bound to anticipate that children would be in such building, and it was a question for the jury whether defendant, in the exercise of due care, should not have thought of the likelihood of small children being brought into the building, and being suffered to move about the building while their parents were there engaged in business matters. In the event that such contingency might reasonably be expected to happen, it was defendant's duty to use reasonable care to keep its premises free from alluring snares, and it was for the jury to say whether or not the inclination of youthful instinct to investigate moving machinery was a condition which it was defendant's duty to consider and guard against.

5. **DAMAGES: Instruction: Mental Anguish: Humiliation Incident to Disfigurement.** An instruction on the measure of damages which permits an allowance for mental anguish suffered from the contemplation by plaintiff of his disfigured and maimed condition, is not erroneous. To deprive plaintiff of this element of his damages would be violative of the fundamental rule that gives to the plaintiff, injured by the negligence of the defendant, full and fair compensation for the actual damages suffered.

6. **DAMAGES: Excessive.** The jury returned a verdict in favor of plaintiff for $8000. Of this amount plaintiff remitted $4000. The evidence was sufficient to support the judgment of $4000.

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn,* Judge.

AFFIRMED.

*Scarritt, Scarritt & Jones* for appellant.

*Marley, Vieregg & Grover* for respondent.

(1)    It was the duty of the Scarritt Building Company to anticipate danger and to protect persons in the building; because those who invite the public to become their patrons and customers, assure their personal safety, and this duty extends to the tenants of the building and their customers. Such persons have a right to be protected, and it is the special duty of the building company to see to their personal safety. Mauzy v. Kinsel, 19 Ill. App. 572; Hayward v. Merrill, 94 Ill. 549. (2)    The respondent was only required to exercise that degree of care which under like or similar circumstances would reasonably be expected of a boy of his years, capacity and experience, and whether he did or not was a question for the jury. Saare v. Railroad, 20 Mo. App. 211; Van Natta v. Railroad, 133 Mo. 13; Burger v. Railroad, 112 Mo. 249; Wynn v. Railroad, 91 Ga. 344; Cooper v. Railroad, 66 Mich. 261; McGuire v. Railroad, 37 Fed. 54; Campbell v. Railroad, 175 Mo. 161; Holmes v. Railroad, 190 Mo. 105; Holmes v. Railroad, 207 Mo. 166; Plumley v. Berge, 124 Mass, 57; Anderson v. Railroad, 81 Mo. App. 118; Fry v. Transit Co., 111 Mo. App. 333. (3) It is proper for the instruction as to measure of damages to include damage for humiliation due to disfigurement. Rosenkranz v. Railroad, 108 Mo. 9; Kennedy v. Transit Co., 103 Mo. App. 1; Schmitz v. Railroad, 119 Mo. 256; McDermett v. Severe, 202 U. S. 600; Express Co. v. Wahl, 168 Fed. 848; Heddles v. Railroad, 77 Wis. 231.

JOHNSON, J.—Plaintiff, an intelligent and bright boy eleven and a half years old, received personal injuries in an office building owned and operated by defendant in Kansas City and alleges in his petition for recovery of damages, that his injuries were caused by the negligence of defendant. A trial before a jury resulted in a verdict for plaintiff for eight thousand

dollar, but during the pendency of motions for a new trial and in arrest of judgment, filed by defendant, plaintiff filed a remittitur of four thousand dollars. The court afterward overruled the motions for a new trial and in arrest and rendered judgment for plaintiff for four thousand dollars. Defendant appealed.

Defendant built a large office building at the corner of Ninth street and Grand avenue in Kansas City and began receiving tenants before the building was entirely finished. Among these early tenants was Mr. Marley, one of plaintiff's lawyers, who rented office rooms in the west wing near its south end on the ninth floor. The building consisted of two wings, the directions of which lengthwise are north and south, joined together at their north ends by the main body of the building, the directions of which are east and west. The passenger elevators, four in number, are on the north side of the body of the building and midway between the wings. Access to Marley's office from the elevators was afforded by an east and west hall on which the elevators opened and which, at the ends, connected with and terminated at the respective hallways which, running north and south, divided and afforded access to the offices in the wings. The hallway in the west wing does not end at its junction with the main hallway but continues north 6 1-2 feet beyond the north line of the latter hallway and ends at the entrance to the freight elevator. This construction gives that elevator the appearance of being at the end of a small alcove but, to a person walking north along the wing hallway, the entrance to the freight elevator is prominent, since it closes the north end of the hallway and is in view until the turn into the main hall is made.

Plaintiff accompanied his mother to the offices of Mr. Marley. After transacting the business which brought her there, Mrs. Shortridge started to leave but at the door of the office remembered something she had forgotten to say and stopped for further conversation.

She told plaintiff to go and signal an elevator for her, meaning, of course, one of the passenger elevators. In going north, plaintiff had his attention attracted by the moving of the cables of the freight elevator which he could see through openings in the elevator door. Instead of turning to go to the passenger elevators, he went to the door of the freight elevator and watched its operation through the openings mentioned. The temporary wooden top of the car appeared and passed beyond the openings, but the car stopped with its floor below the floor where plaintiff was standing. Supposing that the car was coming to the latter floor, plaintiff put his head into one of the openings to see what was on the car. It appears that the operator stopped the car where he did in obedience to a signal to return to the eighth floor which had been passed a few feet. At the moment plaintiff inserted his head into the opening the car started to descend and plaintiff's head was caught by the descending top and badly crushed against the edge of the door at the bottom of the aperture. Fortunately, plaintiff's life was saved by the thoughtfulness and quickness of the operator who, on hearing or feeling the impact of the blow, immediately stopped the car. The entrance to the freight elevator consisted of double doors in each of which was an opening intended to be filled by fire glass. Each opening or panel was 34 1-2 inches vertically by 12 1-2 inches across, and its bottom was 45 inches above the bottom of the door. The glass had not yet been placed in these panels and it was through one of them that plaintiff thrust his head.

The negligence averred in the petition is that "this plaintiff was so injured as aforesaid by the carelessness and negligence of the defendant, in that it maintained said elevator shaft and said double doors and operated said elevator, in the manner and in the conditions aforesaid, there and then well knowing that .the said elevator, both standing still and in motion, and said ele-

vator shaft with the aforesaid doors open and un-
guarded as aforesaid, were attractive, luring and entic-
ing to children of the age of this plaintiff, and that
such children were liable to be injured by reason
thereof."

The two main propositions advanced by defendant
in support of its contention that the jury should have
been instructed to return a verdict in its favor are, first,
that the evidence fails to disclose negligence on the part
of defendant and, second, that it does show that the
injury was caused by negligence in law of the plain-
tiff.

If plaintiff were an adult, there could be no ques-
tion about the soundness of defendant's position with
respect to both of these propositions.   The only motive
that could have prompted anyone to put his head into
one of the openings left in the elevator doors would have
been that which actuated plaintiff—mere curiosity. An
elevator shaft is a place of danger and for a person
voluntarily to thrust his body into the path of the car
would be negligence as a matter of law that would de-
prive him of any cause of action on account of the re-
sultant injuries.   In leaving the panels open, defendant
was under no duty to anticipate that a mature person
might do a thing so foolish; and, since it is axiomatic
in the law of negligence that there can be no negligence
where there is no breach of duty (Witte v. Stifel, 126
Mo. 295), it follows that plaintiff would have no neg-
ligence of defendant on which to found a cause of ac-
tion, were it not for the fact that plaintiff is not an
adult but, when injured, was a boy of tender years,
whose rights and responsibilities with respect to the
question of the duty defendant owed him as well as of
the question of his own negligence are to be measured
by the principles and rules pertaining to persons of
immaturity.

The views expressed were recognized as sound  by
counsel  for plaintiff who, in drafting the petition,

planted the cause of action squarely on the breach of a duty defendant owed children that might be brought into the building. The first and, perhaps, the most vital question in the case is whether defendant, in the exercise of ordinary care and prudence should have anticipated that the safety of children might be endangered by the invitation to the public to use the building before the panels in the elevator doors had been filled. It is conceded that since defendant retained control over the elevators and halls of the building, it owed plaintiff the duty "to see that the passenger elevators . . . were in a reasonably safe condition and carefully operated and to see that the public halls and corridors of the building through which plaintiff must pass to reach said lawyer's office were in a reasonably safe condition for a person properly using the same," but it is argued that as a proper use of the halls and corridors did not require plaintiff to go near the freight elevator, defendant was not bound to anticipate that plaintiff would make an improper use of the public passageways.

This was a large office building tenanted chiefly by lawyers and real estate agents. Its public halls and corridors were not intended to be used by children as a playground nor was it to be thought that small children would go into the building at all except in company with grown persons. But we think the triers of fact were entitled to indulge the conclusion that a reasonably careful and prudent person in the situation of defendant should have thought of the likelihood of small children being brought into the building by their parents and suffered to go into the public halls while the business of the visits was being transacted and, if this is so, it follows that defendant was duty bound to keep the public halls and corridors under its control free from pitfalls and alluring snares. Curiosity is perhaps the most dominant of youthful impulses and it would be against common knowledge to suppose that a child al-

lowed the exercise of his own free will would confine himself to the proper use of the public halls. The enticement to the childish mind of moving or movable machinery of any kind is a fact of which courts have repeatedly taken cognizance, especially in what are called the "turntable cases" and we say plaintiff was but following the inclinations of youthful instinct when, attracted by a more or less vague sight of moving cables, he departed from the straight and narrow path defendant would lay down for him, to see what he could see. It was for the jury to decide whether or not it was negligence for defendant to leave open holes in the elevator doors through which a child could thrust its head into the elevator shaft.

Among the authorities consulted in reaching this conclusion are the following: Miller v. Peck Dry Goods Co., 104 Mo. App. 609; Shaw v. Goldman, 116 Mo. App. 332; Siddall v. Jansen, 168 Ill. 44; Mulaney v. Spence, 15 Abbott's Pr. 323; Dickson v. Waldon, 135 Ind. 507, 34 N. E. 506; Railway v. Flexman, 103 Ill. 564; Colo. Mortgage Co. v. Rees, 21 Colo. 440, 42 Pac. 42; Price v. Water Co., 58 Kans. 554, 50 Pac. 450; O'Brien v. Tatum, 84 Ala. 186, 4 So. 158; Rosenbaum v. Shoffner, 98 Tenn. 624, 40 S. W. 1086.

Passing to the question of plaintiff's conduct, we hold that the issue of contributory negligence in the light of all the facts and circumstances in evidence is an issue of fact and not of law. Defendant cites many cases in support of its argument to the contrary, among which we mention: Mann v. Railway, 123 Mo. App. 491; Walker v. Railroad, 193 Mo. l. c. 482; Spillane v. Railway, 135 Mo. l. c. 425; Payne v. Railroad, 136 Mo. 562; Herdt v. Koenig, 137 Mo. App. 689.

It is common enough to find cases where children—some younger than plaintiff—were pronounced guilty in law of contributory negligence, but in all such cases it will be found that the danger was so imminent and certain that even a child should have realized what it

meant to encounter it. Thus in the Mann case, we observed that the boy might as well have gone to sleep on the railroad track as where he did, and we held him negligent in law. Regarding plaintiff's conduct from the viewpoint of his youth and inexperience, the inference is reasonable that one of his age and degree of intelligence should not have known that his act was fraught with certain danger. He thought the car had stopped for the ninth floor. If it had, he would have been in no danger. He was mistaken, but it is a far cry between an error of judgment and a careless or negligent encounter with imminent and certain danger. Plaintiff should not be held to the exercise of a sound judgment but to that reasonably to be expected of one of his years and apparent mental capacity. [Mann v. Railway, supra.] As we have said, the issue of contributory negligence was for the jury. The demurrer to the evidence was properly overruled.

Objection to the instruction on the measure of damages and the complaint that the verdict and judgment are excessive call for a recital of the injuries sustained by plaintiff. His face was mashed down on the hard edge of the door with the result that the bridge of his nose was so fractured that it is permanently flattened. About half way back the tongue was almost entirely severed. Eight front teeth (four above and four below) were knocked out and the alveolar processes (tooth sockets) were destroyed. There were severe cuts and lacerations on the face one of which extended through the nasal septum. Skillful surgery did much to aid nature in repairing the damage, but according to the evidence of plaintiff, he is greatly disfigured by the loss of the bridge of his nose and by the caved-in appearance of his mouth. Later on, the latter disfigurement may be removed in part by dental surgery and the installation of bridge work. Plaintiff has suffered great pain and anguish both physical and mental and, no doubt, will suffer a great deal more in the future. The in-

struction on the measure of damages in effect included damages for pain and mental anguish suffered from the contemplation by plaintiff of his disfigured condition and the humiliating reflection that he would be maimed for life. Defendant argues "The weight of authority, however, is that mental anguish that may grow out of the consideration of one's crippled condition and particularly mental concern over the mere fact that one is not quite so handsome as he might be, is entirely too visionary and speculative to form a proper or legal element of money damages." Among the authorities cited are Southern Pac. Co. v. Hetzer, 135 Fed. 272; Railroad v. Caulfield, 63 Fed. 396; Elevator Co. v. Gourly, 108 Ill. App. 59; Railroad v. Anderson, 182 Ill. 298.

In the case last cited, the Supreme Court of Illinois say: "The mental pain that comes from the contemplation of a maimed body and the humiliation of going through life in a crippled condition is too remote to be considered an element of damage. The mental pain that may be considered and allowed for in this class of cases is such as is the direct result or concomitant of the physical pain suffered. Mental pain is always an attendant upon severe physical pain—such is the relation of mind and body—and the mental pain that is the direct and necessary result of the physical pain, but not otherwise, is a proper element of damages in personal injury cases." [C. C. Ry. Co. v. Conevin, 72 Ill. App. 81.]

And in Railroad v. Hetzer, supra, SANBORN, C. J., speaking for the court, says: "The rule which has been adopted by this court, however, and the rule which seems to us the better one, is that in actions for personal injury, the plaintiff may recover for the bodily suffering and the mental pain which are inseparable and which necessarily result from the injury. But mortification or distress of mind from the contemplation of the crippled condition and of its effect upon the esteem of his fellows, that mental pain which is separable from

the physical suffering caused by the injury, is too remote, indefinite, and intangible to constitute an element of the damages in such a case, and evidence of it is inadmissible."

Our attention is not called to any case in this State dealing with the precise question. "The general rule is that pain of mind, when connected with bodily injury, is the subject of damages but it must be so connected in order to be included in the estimate." [Schmitz v. Railway, 119 Mo. 1. c. 277.] In Heiberger v. Tel. Co., 133 Mo. App. 45, we held it was immaterial whether or not the mental pain came through the battery. It was sufficient to know that it came along with it as one of the natural concomitants. The distinction sought to be made, in the cases to which we have referred, between mental pain caused by physical pain and mental pain produced by the bitter knowledge that the victim will be maimed or disfigured for life is more refined and subtle than it is practical or humane. How can it be said that one is more remote and intangible than the other? Both are real, substantial, natural consequences of the injury that caused the disfigurement. It is just as certain that the injured person will be oppressed by a sense of humiliation and mortification over the despoiling of his body as it is that he will suffer mental anguish as a result of his physical pain. The jury can understand the nature and extent of the one as well as of the other and estimate the compensation of each with equal exactness. To deprive plaintiff of this element of his damages would be violative of the fundamental rule that gives to the plaintiff, injured by the negligence of the defendant, full and fair compensation for the actual damages suffered.

The Supreme Court of the United States approved and applied the rule we are stating in the following excerpt from the opinion delivered by Justice DAY in McDermett v. Severe, 202 U. S. 600: "Furthermore, an

145 App—20

objection is taken to the charge as to mental suffering, past and future. It is objected that this instruction permits a recovery for future humiliation and embarrassment of mind and feelings, because of the loss of the leg. But we find no objection to the charge as given in this respect. The court said: 'The jury are to consider mental suffering, past and future, found to be the necessary consequences of the loss of his leg.' Where such mental suffering is a direct and necessary consequence of the physical injury, we think the jury may consider it."

And in Express Co. v. Wahl, 168 Fed. 848, the U. S. Circuit Court of Appeals for the Sixth Circuit refused to follow the decision of Judge SANBORN in the Hetzer case and followed the decision of the Supreme Court to which we have just referred. We conclude that the objection to the instruction is not well taken.

By remitting four thousand dollars from the verdict, plaintiff confessed its excessiveness to that extent. We find no warrant in the record for saying that the jury was actuated by passion or prejudice or any improper motive and, reduced by the remittitur, the verdict and judgment do not impress us as being excessive. We have examined the other assignments of error which are made the subjects of special notice in the briefs, but none of them appears to be of sufficient merit to call for discussion here. The case was tried without prejudicial error and, it follows that the judgment should be affirmed.

It is so ordered. All concur.